UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                 :

UNITED STATES SECURITIES AND   :
EXCHANGE COMMISSION,                :
                                 :

            Plaintiff,       :

                                 :

     vs.                       :

                                 :

CHINA NORTHEAST PETROLEUM    :   No. 12 CV 8696 (NRB)
HOLDINGS LIMITED; WANG HONGJUN  :
(a/k/a Hongjun Wang); JU GUIZHI (a/k/a  :
Guizhi Ju); and JIANG CHAO (a/k/a Chao  :   ECF Case
Jiang),                        :
                                 :   **ORAL ARGUMENT REQUESTED**

          Defendants,    :

                                 :

JIANG MINGFU (a/k/a Mingfu  Jiang); and  :
SUN JISHUANG (a/k/a Jishuang Sun),    :

                                 :

          Relief Defendants.  :

                                 :

                                 :
---------------------------------------------------------x


**DEFENDANT JIANG CHAO'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO DISMISS PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE
COMMISSION'S COMPLAINT WITH PREJUDICE**


                               GIBSON, DUNN & CRUTCHER LLP
                               THAD A. DAVIS
                               MICHAEL LI-MING WONG
                               555 Mission Street, Suite 3000
                               San Francisco, CA 94105-0921
                               Telephone:    415.393.8200
                               Facsimile:    415.393.8306

                               BARRY GOLDSMITH
                               200 Park Avenue
                               New York, NY 10166-0193
                               Telephone:    212.351.2440
                               Facsimile:    212.351.5340
                               *Attorneys for Mr. Jiang Chao*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL STATEMENT AND PLAINTIFF'S ALLEGATIONS ...........................................2

ARGUMENT ..................................................................................................................................6

    A.    Legal Standard ..........................................................................................................6

    B.    The Court Should Dismiss Claim Two Because Plaintiff Fails to Plead Any Fraudulent Conduct And Fails Adequately to Plead Scienter..........................7

            1.    Plaintiff's Section 10(b) Claim Fails Because Plaintiff Does Not Adequately Plead Any Fraudulent Device, Scheme, Artifice, or Act.............................................................................................................8

            2.    Plaintiff's Section 10(b) Claim Also Fails Because Plaintiff Fails to Plead Scienter .....................................................................................12

    C.    The Court Should Dismiss Claim One Against Mr. Jiang Because Plaintiff Fails to Plead Adequately Any Fraudulent Conduct or Scienter.............14

    D.    The Court Should Dismiss Claims Five and Six Because Plaintiff Fails to Allege Adequately Facts Supporting Claims That Mr. Jiang Aided and Abetted a Primary Violation of the Securities Laws .............................................15

            1.    The Complaint Fails to Allege Adequately a Primary Violation of Exchange Act Section 10(b) ....................................................................16

            2.    The Complaint Fails to Allege Adequately That Mr. Jiang Had Actual Knowledge of a Primary Violation ................................................16

            3.    Claims Five and Six Fail to Allege Adequately That Mr. Jiang Substantially Assisted a Primary Violation ...............................................20

CONCLUSION.............................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................. 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007) ................................................................... 7, 8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................. 6, 7

*Chill v. Gen. Elec. Co.,*
   101 F.3d 263 (2d Cir. 1996) .................................................................. 14

*Decker v. Massey-Ferguson, Ltd.,*
   681 F.2d 111 (2d Cir. 1982) .................................................................. 14

*DeMaria v. Andersen,*
   153 F. Supp. 2d 300 (S.D.N.Y. 2001) .............................................. 9, 10

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,*
   553 F.3d 187 (2d Cir. 2009) .................................................................. 18

*Greenberg v. Bear, Stearns & Co.,*
   220 F.3d 22 (2d Cir. 2000) .................................................................... 23

*Harris v. Mills,*
   572 F.3d 66 (2d Cir. 2009) ...................................................................... 6

*In re NYSE Specialists Sec. Litig.,*
   503 F.3d 89 (2d Cir. 2007) ...................................................................... 7

*In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.,*
   No. 06-643, 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007) ................... 9

*In re Smith Barney Transfer Agent Litig.,*
   884 F. Supp. 2d 152 (S.D.N.Y. 2012) ................................................... 11

*Kemp v. Universal Fin. Corp.,*
   No. 05-9883, 2007 WL 86942 (S.D.N.Y. Jan. 10, 2007) ....................... 8

*Novak v. Kasaks,*
   216 F.3d 300 (2d Cir. 2000) .............................................................. 14, 18

*S.E.C. v. Apuzzo,*
   689 F.3d 204 (2d Cir. 2012) ....................................................... 17, 18, 22

*S.E.C. v. Cedric Kushner Promotions, Inc.,*
   417 F. Supp. 2d 326 (S.D.N.Y. 2006) .............................................. 19, 22

*S.E.C. v. Collins & Aikman Corp.,*
   524 F. Supp. 2d 477 (S.D.N.Y. 2007) ......................................... 7, 13, 19

*S.E.C. v. DiBella*,
   587 F.3d 553 (2d Cir. 2009) ................................................................. 17

*S.E.C. v. Espuelas*,
   579 F. Supp. 2d 461 (S.D.N.Y. 2008) .................................. 18, 19, 23

*S.E.C. v. Espuelas*,
   No. 06-2435, 2012 WL 5288740 (S.D.N.Y. Oct. 26, 2012) ................. 21

*S.E.C. v. Juno Mother Earth Asset Mgmt., LLC*,
   No. 11-1778, 2012 WL 685302 (S.D.N.Y. Mar. 2, 2012) ..................... 15

*S.E.C. v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011) .................................. 10, 12, 16

*S.E.C. v. KPMG LLP*,
   412 F. Supp. 2d 349 (S.D.N.Y. 2006) ................................................ 11

*S.E.C. v. Lee*,
   720 F. Supp. 2d 305 (S.D.N.Y. 2010) .................................................. 8

*S.E.C. v. Lucent Tech., Inc.*,
   610 F. Supp. 2d 342 (D.N.J. 2009) .................................................... 21

*S.E.C. v. Parnes*,
   No. 01-0763, 2001 WL 1658275 (S.D.N.Y. Dec. 26, 2001) ................... 2

*S.E.C. v. Pentagon Capital Management PLC*,
   612 F. Supp.2d 241 (S.D.N.Y. 2009) ................................................ 13

*S.E.C. v. Tambone*,
   417 F. Supp. 2d 127 (D. Mass. 2006) .................................................. 2

*S.E.C. v. Treadway*,
   430 F. Supp. 2d 293 (S.D.N.Y. 2006) .......................................... 13, 16

*United States v. Peoni*,
   100 F.2d 401, 402 (2d Cir. 1938) ...................................................... 22

*VanCook v. S.E.C.*,
   653 F.3d 130 (2d Cir. 2011) .............................................................. 23

*Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC*,
   474 F. Supp. 2d 505 (S.D.N.Y. 2007) .................................................. 8

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1, 6

Fed. R. Civ. P. 9(b) ................................................................................. 1, 8

Defendant Chao Jiang ("Mr. Jiang" or "Defendant") moves to dismiss Plaintiff United States Securities and Exchange Commission's ("SEC" or "Plaintiff") Complaint with prejudice, pursuant to Federal Rules of Civil Procedure 9(b) ("Rule 9(b)") and 12(b)(6) ("Rule 12(b)(6)"), for failure to plead fraud with specificity and failure to state any plausible claim.

## PRELIMINARY STATEMENT

Despite having spent years conducting an investigation, taking sworn testimony from numerous individuals (including the Defendant and co-defendants) and obtaining documents from China Northeast Petroleum Holdings Limited ("CNEP") and its auditors, the SEC fails to allege in its Complaint specific facts to support its claims that Mr. Jiang violated any laws at all, much less any securities laws.  Nowhere in the Complaint does Plaintiff plead with particularity facts that establish that Mr. Jiang engaged in any fraudulent conduct, acted with the requisite scienter, had actual knowledge of a primary violation of the securities laws, or substantially assisted in a primary violation of the securities laws.  Rather, Plaintiff's Complaint strings together barely substantiated legal conclusions in order to smear Mr. Jiang with the factual assertions it makes against *other* defendants.  This is not sufficient to meet Plaintiff's pleading obligations.

Plaintiff seeks to impose guilt on Mr. Jiang by employment and association.  For example, while Plaintiff alleges that Mr. Jiang met with investment bankers to raise capital and made presentations on behalf of his employer at investor conferences, the Complaint fails to allege what—if any—fraudulent actions Mr. Jiang committed as a result of performing his job responsibilities.  Compl. ¶ 21.  Similarly, while Plaintiff alleges that Mr. Jiang assisted in drafting press releases and SEC filings, it nowhere alleges that Mr. Jiang controlled the final content of, or signed off on, those releases or filings—or had anything more than a ministerial

1

role in CNEP's business affairs.  Instead, Plaintiff specifically alleges that the defendants with control authority over CNEP's SEC filings and bank account withdrawals were co-defendants Wang and Ju—notably <u>not</u> Mr. Jiang.  *Id.* ¶¶ 79–82.

Given its lengthy investigation, there is no excuse for the SEC's failure to plead with the particularity required under Exchange Act Section 10(b), Exchange Act Rule 10b-5, Rule 9(b), and governing case law.  *See S.E.C. v. Parnes*, No. 01-0763, 2001 WL 1658275, at *5 (S.D.N.Y. Dec. 26, 2001) (dismissing claims for failure to plead with particularity where "the SEC . . . had three years' discovery and access to records and documents"); *S.E.C. v. Tambone*, 417 F. Supp. 2d 127, 131 (D. Mass. 2006) (applying "the particularity requirements in [a] rigorous manner" where "the SEC [took] the testimony of at least 23 witnesses and conducted extensive document discovery").  Despite years of investigation, the Complaint fails on all claims to plead adequately the facts necessary to support Plaintiff's allegations against Mr. Jiang.  As such, the Court should dismiss Claims One, Two, Five, and Six with prejudice.

## FACTUAL STATEMENT AND PLAINTIFF'S ALLEGATIONS

The facts, as alleged in the Complaint, and accepted as true solely for the purposes of this motion, are as follows: CNEP engages in the exploration, drilling, and production of oil in China.  Compl. ¶ 2.  On November 29, 2012, Plaintiff filed the above-captioned action against Mr. Jiang, together with CNEP, CNEP's President, Wang Hongjun ("Wang"), and Wang's mother, Ju Guizhi ("Ju"), who is also CNEP's co-founder and former director.  *Id*. ¶¶ 15–17. Plaintiff's Complaint identifies Mr. Jiang only as the Vice President of Corporate Finance and Secretary of CNEP.  *Id*. ¶ 17.  In contrast to its allegations against Wang and Ju, the Complaint does not allege that Mr. Jiang is a control person under Section 20(a) of the Exchange Act.

In April 2004, CNEP was formed through a reverse merger with a Nevada-based U.S. shell company.  Compl. ¶ 12.  Afterwards, CNEP registered its common stock pursuant to the relevant SEC rules.  *Id.*  On or about June 15, 2009, CNEP began trading on NYSE.  *Id.*  In late June 2009, CNEP filed a shelf registration statement ("Registration Statement"), which registered public offerings up to $40 million of securities and stated that CNEP would "[u]se the net proceeds from the sale of the securities . . . for general corporate purposes, which may include working capital . . . ."  *Id.* ¶ 20.  The Registration Statement was signed by CNEP's President, Wang.  *Id.*  Afterwards, Mr. Jiang met with investment bankers, appeared at "road shows," and made presentations on behalf of CNEP at investor conferences.  *Id.* ¶¶ 15–21.  The Complaint fails to allege the dates, contents, and attendees of the meetings and presentations.  According to the Complaint, two company press releases listed Mr. Jiang as a contact person for CNEP.  *Id.* ¶¶ 22–23.

On September 16, 2009, CNEP filed a Current Report on Form 8-K announcing a public offering of CNEP stock (the "September 8-K").  Compl. ¶ 22.  The September 8-K contained a press release stating that it would "use the net proceeds from the offering to fund its future business expansion plan, and for general working capital purposes."  *Id.*  A Securities Purchase Agreement included in the September 8-K stated that CNEP "shall use the net proceeds from the sale of the Securities hereunder for working capital purposes and shall not use such proceeds for: (a) the satisfaction of any portion of the Company's debt . . . ."  *Id.*  The Complaint makes a general allegation that Mr. Jiang "assisted" in drafting SEC filings, but fails to allege any specifics, including the extent of his contributions.  *Id.* ¶ 21.  As with the Registration Statement, the September 8-K was signed by Wang.  *Id.* ¶ 22.

On December 15, 2009, CNEP filed a Current Report on Form 8-K announcing a second offering of CNEP stock (the "December 8-K").  Compl. ¶ 23.  The December 8-K included a press release stating that CNEP planned to "use the net proceeds from the offering to redeem its 8% Senior Debenture . . . and for general working capital purposes . . . ."  *Id*.  A Securities Purchase Agreement included in the December 8-K stated that CNEP "shall use the net proceeds from the sale of the Securities hereunder for working capital purposes and repayment of debt."  *Id*.  Wang signed the December 8-K.  *Id*.  Again, the Complaint fails to allege any role that Mr. Jiang played regarding the December 8-K.

 Through the two offerings, CNEP raised $31.9 million, which was deposited into CNEP's U.S. bank account (the "Account").  Compl. ¶¶ 24–25.  Wang had signature authority over the Account.  *Id*. ¶ 25.  Likewise, Mr. Jiang had signature authority over the Account from 2005 until October 10, 2010.  *Id*.  During that period, CNEP's co-founder, Ju, directed Mr. Jiang, as part of his employment, to make transfers to and from the Account.  *Id*.  On November 3, 2009 and December 16, 2009, Mr. Jiang authorized the transfer of $500,000 and $410,000, respectively, from the Account to an account in the name of his father, Mingfu Jiang ("Mingfu Jiang").  *Id*. ¶ 26.  The Complaint does not allege any purpose for these transfers, nor does it allege what any recipient did with the funds.  The Complaint alleges only that there exists "no known or documented business purpose" for the transfers.  *Id*.

On or around November 19, 2009, Ju directed Mr. Jiang to transfer $300,000 from the Account to a bank account held in the name of Ju's daughter-in-law.  Compl. ¶ 28.  The Complaint alleges that Ju's daughter-in-law used these funds to purchase property in California, and again notes that there exists "no known or documented business purpose" for the transfer.  *Id*. ¶ 28.  Between September 25 and 29, 2009, according to the Complaint, Ju received transfers

totaling approximately $5.85 million, as authorized by Mr. Jiang in his role as signatory authority over the Account. *Id.* ¶ 29.

In April 2010, CNEP's Audit Committee chairman made an inquiry of CNEP's management about a line-item reflecting that approximately $3.89 million was due to CNEP from a corporate shareholder. Compl. ¶ 33–34. Thereafter, CNEP retained a Hong Kong accounting firm to review the $3.89 million and any related-party transactions that occurred in 2009. *Id.* ¶ 35. The report disclosed the existence of numerous related-party transactions between CNEP and Wang or Ju in 2009. *Id.* ¶ 36. These related-party transactions included numerous loans between Ju and Wang and CNEP or payments to third parties on behalf of the company. *Id.* ¶ 39. Notably, the report "found no evidence to suggest that funds transferred to either Ms[.] Ju or Mr[.] Wang were withdrawn for her / his personal use[.]" Davis Decl. Ex. B, at 11.

### The Four Claims Attempting to Sweep in Mr. Jiang

Of the seven claims made in the Complaint, Plaintiff alleges four claims against Mr. Jiang, though none are solely directed toward him. Plaintiff's claims against Mr. Jiang include the following:

| *Claim Number* | *Violations Alleged* |
|---|---|
| One | Section 17(a) of the Securities Act |
| Two | Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 |
| Five | Aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Exchange Act Rules 13a-1, 13a-11, and 13a-13 |
| Six | Aiding and abetting violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 |

The Complaint alleges that CNEP's public filings contained material misrepresentations and omissions.  Specifically, Plaintiff alleges that the Registration Statement, the September 8-K, and the December 8-K filed by CNEP in 2009 contained misleading information regarding the intended use of the net proceeds from the public offerings.  Plaintiff does not allege which, if any, of the alleged material misstatements were written or disseminated by Mr. Jiang.  Plaintiff further alleges that Ju and Wang directed the related-party transactions, and that Mr. Jiang's father—Mingfu Jiang—was a beneficiary of certain of such transfers.  Compl. ¶¶ 25–26, 28–29. Plaintiff does not allege that Mr. Jiang received any personal benefit from the alleged money transfers.

Plaintiff further alleges that Mr. Jiang "aided and abetted CNEP's reporting, recordkeeping and internal controls violations."  Compl. ¶¶ 73–75.  Plaintiff does not allege any involvement by Mr. Jiang in, or that he possessed any knowledge of or control over, CNEP's books and records or internal controls.

## ARGUMENT

### A.    Legal Standard

While civil complaints must offer plausible allegations,  Fed. R. Civ. P. 12(b)(6); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), the Court should not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).  Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp.*, 550 U.S. at 555.

Securities fraud claims "are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss." *S.E.C. v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 484 (S.D.N.Y. 2007) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)). A complaint alleging securities fraud must satisfy Rule 9(b)'s requirement that "the circumstances constituting fraud . . . be stated with particularity." *Collins & Aikman Corp.*, 524 F. Supp. 2d at 484 (citations omitted). "This pleading constraint serves to provide a defendant with fair notice of plaintiff's claim [and] safeguard his reputation from improvident charges of wrongdoing . . . ." *Id.*.

In deciding a motion to dismiss, the Court is not limited to the face of the complaint, but "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns*, 493 F.3d at 98; *see also Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC*, 474 F. Supp. 2d 505, 516 (S.D.N.Y. 2007) (noting that under Rule 9(b) "plaintiff must set forth the who, what, when, where, and how of the alleged fraud.") (quotations omitted).

**B.     The Court Should Dismiss Claim Two Because Plaintiff Fails to Plead Any Fraudulent Conduct And Fails Adequately to Plead Scienter**

To state a claim under Exchange Act Rule 10b-5(a) or (c), the SEC must plead that a defendant: (1) committed a manipulative or deceptive act; (2) in furtherance of an alleged scheme to defraud; (3) with scienter. *See S.E.C. v. Lee*, 720 F. Supp. 2d 305, 325 (S.D.N.Y. 2010). "Even though [Rule 10b-5(a) and (c) claims are] not subject to the [Private Securities Litigation Reform Act's] heightened pleading standards, the sub-section[s] remain subject to

[Federal Rule of Civil Procedure] 9(b)." *Kemp v. Universal Fin. Corp.*, No. 05-9883, 2007 WL 86942, at *17 n.9 (S.D.N.Y. Jan. 10, 2007) (dismissing Rule 10b-5(c) claim) (citations omitted).

**1.      Plaintiff's Section 10(b) Claim Fails Because Plaintiff Does Not Adequately Plead Any Fraudulent Device, Scheme, Artifice, or Act**

Although "[t]he elements of a claim under Rule 10b-5(a) and (c) have been stated in different ways" by courts in this District, these courts consistently find that "plaintiffs must allege conduct that is 'manipulative or deceptive.'" *In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, No. 06-643, 2007 WL 2694469, at *7 (S.D.N.Y. Sept. 13, 2007) (citations omitted) (dismissing Rule 10b-5(a) and (c) claims predicated on defendants' alleged issuance and fraudulent mischaracterization of undocumented loans).  To "allege deceptive conduct, plaintiffs must identify (1) the source of the understanding falsely created by defendant . . . and (2) conduct that violated that understanding." *Id*. at *8.  Here, with respect to Mr. Jiang, Plaintiff's claim fails on both.

**a.      Plaintiff's Complaint Does Not Allege That Mr. Jiang Created Any False Sources of Information**

The SEC alleges that CNEP's public statements in connection with two stock offerings— that the offering proceeds would be used "to fund its future business expansion plan, and for general working capital purposes"—were material misrepresentations in light of certain alleged related-party transactions.  Compl. ¶ 50.  These statements are not misleading as a matter of law, however; accordingly, the claim must fail.

In *DeMaria v. Andersen*, the court held that a statement that proceeds from an initial public offering would be "used for working capital" was not materially misleading where the proceeds were used in part to repay corporate losses.  153 F. Supp. 2d 300, 313 (S.D.N.Y. 2001) (dismissing Section 11 claim).  First, the court noted that the statement contained caveats:  the

proceeds would be used "primarily" as working capital, but that the company would also retain "broad discretion." *Id.* Second, the court recognized that "[a] function of working capital is to fund operations." *Id.* Both factors are applicable in the present case. The Registration Statement, for example, represented that the proceeds from the offerings would be used for "*general* corporate purposes, which *may* include working capital . . . ." Compl. ¶ 20 (emphasis added). This type of broad and open-ended commitment regarding the use of funds is not misleading, as investors are aware that such proceeds may be used to fund a variety of business expenses and that the company has flexibility in committing funds. Moreover, and akin to *DeMaria*, the Complaint acknowledges that the proceeds were used to fund ongoing operations. *See id.* ¶ 54 (discussing use of proceeds to "pay corporate expenses"). Accordingly, because CNEP's public statements encompass the very behavior about which the SEC now complains, the public statements were not misleading and the Court should dismiss the SEC's claims.

### b. Plaintiff's Complaint Does Not Allege That Mr. Jiang Engaged in Any Fraudulent Conduct

Claim Two further fails, at least with respect to Mr. Jiang, for the independent reason that Plaintiff has failed to plead any deceptive conduct on Mr. Jiang's part.

"[C]ourts have not allowed subsections (a) and (c) of Rule 10b-5 to be used as a 'back door into liability for . . . a false statement or omission in violation of subsection (b) of Rule 10b-5." *S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011). "Thus, where the core misconduct alleged is in fact a misstatement, it would be improper to impose primary liability . . . by designating the alleged fraud a 'manipulative device' rather than a 'misstatement.'" *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166–67 (S.D.N.Y. 2012) (citations omitted). The core misconduct underlying Plaintiff's Complaint concerns CNEP's and Wang's allegedly inaccurate representations regarding the intended use of offering funds and their

subsequent alleged failure to disclose the actual use of such offering funds.  *See, e.g.*, Compl. ¶ 50 (describing various SEC filings that allegedly contained false representations).  Although Plaintiff alleges that Mr. Jiang "assisted in drafting and reviewing CNEP's press releases and filings with the SEC," *id*. ¶ 21, these allegations are part and parcel of Plaintiff's claim against Mr. Jiang for aiding and abetting a Rule 10b-5(b) violation.[1]  "Because the core misconduct alleged is in fact a misstatement[,]" it is improper to impose Rule 10b-5(a) and (c) liability on Mr. Jiang "by designating the alleged fraud a 'manipulative device' rather than a 'misstatement'" or omission.  *S.E.C. v. KPMG LLP*, 412 F. Supp. 2d 349, 378 (S.D.N.Y. 2006).

Even if the Court were to find that Plaintiff has adequately alleged the existence of some additional conduct beyond the making of fraudulent statements or omissions, Plaintiff fails to attribute any such conduct to Mr. Jiang.  Rather, Plaintiff attempts to bootstrap a scattershot of factual allegations asserted against *other* defendants onto its claim against Mr. Jiang.  For example, Plaintiff makes the conclusory allegation that Mr. Jiang violated Rule 10b-5(a) and (c) by "raising funds with the intent to divert those offering proceeds for improper purposes . . . ." Compl. ¶ 58.  But Plaintiff's Complaint lacks any factual allegations that would support this assertion.  Whereas Plaintiff alleges that "*CNEP* raised approximately $31.9 million in the U.S. capital markets," Plaintiff makes no such similar allegation with respect to Mr. Jiang.  *Id*. ¶ 5 (emphasis added).  Plaintiff also maintains that Mr. Jiang has "engage[d] in a long-standing pattern of related-party transactions." *Id*. ¶ 58.  But again, Plaintiff conflates the allegations it asserts against two other defendants—Wang and Ju—with the allegations it asserts against Mr. Jiang.  *See id*. ¶¶ 2, 32, 36, 41.

---

[1]  As described below, the Complaint lacks any detailed factual allegations relating to the ways in which Mr. Jiang allegedly "assisted" in the drafting of any documents, what portions of the documents Mr. Jiang allegedly "assisted" in drafting, or whether the portions of the documents that Mr. Jiang allegedly "assisted" in drafting were materially accurate.  For this reason, amongst other reasons, Plaintiff's claim for aiding and abetting an alleged violation of Rule 10b-5(b) is deficient.  *See infra* § E.

To the extent Plaintiff actually alleges specific conduct undertaken by Mr. Jiang (as opposed to other defendants in this action), the conduct alleged is not "inherently deceptive" and does not, on its face, violate Rule 10b-5(a) or (c).  *See Kelly*, 817 F. Supp. 2d at 344 ("Scheme liability under subsections (a) and (c) of Rule 10b-5 hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement.") (emphasis added).  Where the alleged conduct is not inherently deceptive, and only becomes deceptive through subsequent misstatements in public filings, such conduct is not actionable under Rule 10b-5(a) or (c).  *See id.*

Plaintiff alleges that Mr. Jiang "made presentations on behalf of CNEP at investor conferences," Compl. ¶ 21, but does not describe with particularity the specific investor conferences at which he spoke, the audiences of these alleged presentations, the subject matter of these alleged presentations, the dates of these alleged presentations, or even whether the content of Mr. Jiang's presentations was materially accurate.  Plaintiff also states that "Ju regularly directed Jiang Chao to make transfers to and from the [A]ccount*,*" *id.* ¶ 25, and "Jiang Chao effected [a] transfer from the U.S. Bank Account" because "Ju directed Jiang Chao to transfer" the money, *id.* ¶ 28.  But where, as here, the defendant's alleged role in the creation of fraudulent statements is purely ministerial, liability does not attach.  *See Collins & Aikman Corp.*, 524 F. Supp. 2d at 486  ("A person who participates in such a scheme by performing purely administrative duties without knowledge of the purpose of the scheme has not employed a manipulative or deceptive device and so has not incurred liability.")  Likewise, Plaintiff's allegation that Mr. Jiang authorized the transfer of funds to a bank account held in the name of Mingfu Jiang is entirely deficient.  Plaintiff characterizes the transfers as "improper" (*i.e.*, Plaintiff attaches a generic legal conclusion to the alleged transfer), Compl. ¶ 19, based solely on

the allegation that there was "no known or documented business purpose for the transfers[,]" *id.* ¶ 26. Plaintiff's inductive reasoning suffers from a fatal disconnect: the lack of a documented business purpose does not necessarily render such transfers "improper."

For the reasons set forth above, Plaintiff fails to allege any fraudulent or deceptive conduct engaged in by Mr. Jiang, and Plaintiff's Exchange Act Section 10(b) and Exchange Act Rule 10b-5(a) and (c) claim fails as a matter of law.

## 2.    Plaintiff's Section 10(b) Claim Also Fails Because Plaintiff Fails to Plead Scienter

In order to plead intent to deceive, the SEC must allege facts giving rise to "a strong inference" of fraudulent intent. *S.E.C. v. Pentagon Capital Management PLC,* 612 F. Supp.2d 241, 264 (S.D.N.Y. 2009) (applying "the Second Circuit's 'strong inference' standard under Rule 9(b)"). The SEC may only achieve this by showing: (1) that Mr. Jiang had motive and opportunity to commit fraud; or (2) conscious misbehavior or recklessness. *S.E.C. v. Treadway*, 430 F. Supp. 2d 293, 331 (S.D.N.Y. 2006).

### a.    The Complaint Fails To State That Mr. Jiang Chao Had Motive

To demonstrate motive, Plaintiff must allege that Mr. Jiang "benefited in some concrete and personal way from the purported fraud." *Novak v. Kasaks*, 216 F.3d 300, 307–08 (2d Cir. 2000). However, Plaintiff's Complaint fails to allege a single fact suggesting that Mr. Jiang personally benefitted in any concrete way from any alleged conduct described in the Complaint (assuming that Plaintiff has alleged conduct at all, *see supra* § B(1)(b)). While Plaintiff alleges that Mr. Jiang caused CNEP to transfer funds to Mingfu Jiang, Compl. ¶ 26, Plaintiff fails to specify what, if any, concrete benefit Mr. Jiang derived from *his father's* alleged receipt of money. Plaintiff does not, for example, allege that Mr. Jiang personally obtained any portion of

the allegedly transferred funds.  Nor does Plaintiff even allege that Mr. Jiang realized any

"psychic" or "emotional" benefit from his father's alleged receipt of funds that could arguably

satisfy the motive requirement.  Without any such allegation, there is no basis upon which this

Court may find that Mr. Jiang has realized any concrete and personal benefit due to any alleged

fraudulent conduct.

### b.    Plaintiff Fails to Allege Any Conscious Misbehavior or Recklessness

"A plaintiff in a fraud action may also plead scienter 'by alleging facts that constitute

strong circumstantial evidence of conscious misbehavior or recklessness.'"  *Chill v. Gen. Elec.*

*Co.*, 101 F.3d 263, 268 (2d Cir. 1996).  The Second Circuit has stated that recklessness "must, in

fact, approximate an actual intent to aid in the fraud being perpetrated."  *Decker v. Massey-*

*Ferguson, Ltd.*, 681 F.2d 111, 121 (2d Cir. 1982).

Plaintiff makes a single unsubstantiated and conclusory statement regarding Mr. Jiang's

mental state, alleging that Mr. Jiang "knew, or [was] reckless or negligent in not knowing, that

[defendants] employed devices, scheme and artifices to defraud and engaged in transactions,

practices or courses of conduct that operated as a fraud . . . ."  Compl. ¶ 62.  This sweeping legal

conclusion, untethered to any factual allegation, fails to satisfy Plaintiff's burden to submit

concrete factual allegations to establish the requisite level of scienter.  *See S.E.C. v. Juno Mother*

*Earth Asset Mgmt., LLC*, No. 11-1778, 2012 WL 685302, *7 (S.D.N.Y. Mar. 2, 2012)

(discounting SEC's legal conclusions about defendants' mental states).  The likely reason for

Plaintiff's dearth of factual support is that the deposition transcript to which the SEC cites in its

own Complaint, Compl. ¶ 27, confirms that Mr. Jiang, in fact, had no knowledge of any alleged

fraud.  For example, Mr. Jiang stated as follows during his deposition with the SEC:

- Q: In the fall or early winter, fall of '09 to early winter '10, did you ever either learn or hear from any sources, or hear rumors that the money was used for any other purpose –
- A. No.
- Q: – other than the working capital and to acquire Tian Chen?
- A: No.

(Davis Decl. Ex. A, at 0120:10-18).  During the same deposition, Mr. Jiang further stated as follows:

- Q: And did they tell you what those funds were going to be used for?
- A: Based on my understanding, that's [*sic*] the working capital.
- Q: Did you ever hear or learn that the funds were used for any other purposes?
- A: No.

(*Id.* at 0123:10-16).  And finally, Mr. Jiang stated the following:

- Q: Did you speak with anyone individually that [*sic*] was a director such as Mr. Bruce, Mr. Rule?
- A: No.
- Q: Is there a reason why you did not?
- A: Because I'm I don't [*sic*] aware that this [*sic*] was wrong with doing that.
- Q: I'm sorry, I didn't understand you.
- A: I say [*sic*] that I don't know what's the problem with doing that [*sic*].

(*Id.* at 0154:17-25).  Thus, the Complaint not only lacks specific factual allegations supporting any inference of conscious misbehavior or recklessness; it actually cites to a transcript that elsewhere confirms that Mr. Jiang did not have a culpable mental state.  As such, Plaintiff's claim under Exchange Act Section 10(b) and Exchange Act Rule 10b-5(a) and (c) fails, and the Court should dismiss Count Two as against Mr. Jiang.

## C.   The Court Should Dismiss Claim One Against Mr. Jiang Because Plaintiff Fails to Plead Adequately Any Fraudulent Conduct or Scienter

Section 17(a) subsections (1) and (3) of the Securities Act provide that is it unlawful for any person in the offer or sale of any securities to employ any device, scheme, or artifice to defraud, or engage in any transaction, practice, or course of business which operates as a fraud or deceit upon a purchaser.  "[N]umerous courts have held that the elements of a claim under

Section 17(a) are 'essentially the same' as those for claims under Rule 10b-5." *Kelly*, 817 F. Supp. 2d at 345 (citations omitted).  In fact, due to the overlapping nature of Section 17(a) and Rule 10b-5 claims, courts routinely dismiss plaintiffs' claims brought under Section 17(a) when they fail to adequately plead synonymous claims under Rule 10b-5.  *See, e.g.*, *id.* at 366 (dismissing SEC's claims under Section 17(a)(1) and (3)) ("Because claims under subsections (1) and (3) of Section 17(a) are treated the same as claims under subsections (a) and (c) of Rule 10b-5, the SEC's claims under sections (1) and (3) must also be dismissed."); *see also Treadway*, 430 F. Supp. 2d at 340 (denying SEC's motion for summary judgment as to Section 17(a) claim[s] "for the same reasons" the court denied summary judgment as to SEC's Rule 10b-5 claims).

As discussed above, *see supra* § B, Plaintiff fails to state a claim under Section 10(b) and Rule 10b-5(a) or (c).  As such, Plaintiff likewise fails to properly plead claims under Section 17(a)(1) or (3), and Count One should be dismissed as against Mr. Jiang.

**D.    The Court Should Dismiss Claims Five and Six Because Plaintiff Fails to Allege Adequately Facts Supporting Claims That Mr. Jiang Aided and Abetted a Primary Violation of the Securities Laws**

The Court should also dismiss Plaintiff's aiding and abetting claims because these claims fail to allege sufficient facts to state any of the requirements for aiding and abetting liability.  To establish aiding and abetting liability, the SEC must allege:  "(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." *S.E.C. v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012) (citations omitted).  None of these elements are met here.

1.      **The Complaint Fails to Allege Adequately a Primary Violation of Exchange Act Section 10(b)**

To allege aiding and abetting liability, plaintiffs must first properly allege a primary violation of the securities law by a primary party.  *See S.E.C. v. DiBella*, 587 F.3d 553, 566 (2d Cir. 2009).  As a preliminary matter, and as discussed above, *see supra* § B(1)(a), the alleged representations are not materially misleading.  Moreover, the Complaint fails to allege the requisite scienter.  "[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. . . . Only where such allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient."  *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,  553 F.3d 187, 200 (2d Cir. 2009) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2009).  Plaintiffs have not alleged the requisite intent.  Indeed, the auditors' report cited by the SEC in its Complaint states that the auditors "found *no evidence* to suggest that funds transferred to either Ms[.] Ju or Mr[.] Wang were withdrawn for her / his personal use[.]"  Davis Decl. Ex. B at 11 (emphasis added).  Thus, the SEC's Complaint fails to state a claim for a primary violation under Section 10(b) of the Exchange Act and Claims Five and Six should therefore be dismissed.

2.      **The Complaint Fails to Allege Adequately That Mr. Jiang Had Actual Knowledge of a Primary Violation**

In addition to alleging a primary violation, plaintiffs must allege "*actual knowledge* of the violation by the aider and abettor."  *S.E.C. v. Espuelas*, 579 F. Supp. 2d 461, 484 (S.D.N.Y. 2008) (emphasis added).  Factual allegations that give rise only to an inference of recklessness are insufficient as a matter of law.[2]  *See id.* ("[T]he allegations against [defendant]—that she

---

[2]  While the Dodd-Frank Act of 2010 amended Section 20(e) to add the words "or recklessly" after "knowingly," because the allegations occurred prior to the passage of the statute, the amendment does not apply to the case. *See Apuzzo*, 689 F.3d at 211 n.6.

negotiated the AMG transactions, that she was aware of the StarMedia's policy with regard to insertion orders, and that she failed to report the side agreements to the sales department—raise a strong inference that [defendant] was reckless.  The fact that actual knowledge is the standard for aiding and abetting, however, compels the Court to dismiss the claims . . . .").  Plaintiff's bare-bones pleading fails to meet this high burden.

### a.   Claim Five: Aiding and Abetting Violations of CNEP's Reporting, Recordkeeping, or Internal Control Responsibilities

The Complaint fails to allege sufficient facts demonstrating Mr. Jiang's "actual knowledge" of any violations of Exchange Act Section 13(a), 13(b)(2)(A), or 13(b)(2)(B), or the applicable rules, and the Court should therefore dismiss Claim Five.

In assessing claims alleging the aiding and abetting of violations of Section 13(a) and (b), courts routinely dismiss claims that fail to allege knowledge of the applicable accounting rules or involvement with the primary violator's auditing or accounting treatment.  *See, e.g.*, *Espuelas*, 579 F. Supp. 2d at 485 (dismissing claim where "[t]he Complaint contains no allegations that someone with accounting knowledge communicated to [defendant] that the transactions were being accounted for incorrectly, and . . . the Complaint lacks any allegations that [defendant] possessed any accounting expertise herself"); *S.E.C. v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 337 (S.D.N.Y. 2006) (granting summary judgment and dismissing aiding and abetting claims under Section 13(a) and (b) where "[t]here is no evidence to support the claim that [defendant] was responsible for [the company's] books and records or for maintaining adequate controls, or that he aided or abetted any violations with respect to those requirements").  On the other hand, where plaintiffs allege facts demonstrating the provision of false information to the accountants or auditors, the underlying claims have survived dismissal at the pleadings stage.  *See, e.g.*, *Collins & Aikman Corp.*, 524 F. Supp. 2d at 497 ("While the allegations with

respect to violations of section 13 are indeed sparse, . . . the Complaint, viewed as a whole, provides detailed allegations about the false statements made by defendants to the auditors.").

Here, the Complaint fails to allege that Mr. Jiang had any involvement whatsoever in CNEP's books and records or internal controls.  In describing Mr. Jiang's role within CNEP, the Complaint makes no allegation that Mr. Jiang has any background in accounting, that he had any specific accounting responsibilities for the company, or that he had any communications with the company's accountants or auditors.  *See* Compl. ¶ 17.  Moreover, the Complaint makes no allegation that Mr. Jiang had any duty to report information to the accounting department or that anything he did resulted in any false financial statements or company filings.  Ultimately, the Complaint alleges no facts demonstrating that Mr. Jiang had actual knowledge of any record-keeping or internal control violations—the requirement for aiding and abetting liability.  Instead, the Complaint merely notes that the related-party transactions occurred without a "known or documented business purpose" and were not reported in the required SEC filings.  *Id.* ¶ 71.  While the Complaint does allege that Mr. Jiang "assisted in drafting and reviewing CNEP's press releases and filings," the Complaint fails to allege that Mr. Jiang had any knowledge that related-party transactions should have been reported in the filings.  *Id.* ¶¶ 21–22.  In fact, the testimony in the very deposition the Complaint cites for other purposes demonstrates that Mr. Jiang had no knowledge of any accounting irregularities.  *See supra* § B(2)(b).  This is not sufficient to meet the stringent "actual knowledge" requirement or the strict pleading requirements under Rule 9(b).  The Court should therefore dismiss Claim Five.

> **b.    Claim Six: Aiding and Abetting Violations of Exchange Act Section 10(b) and Exchange Act Rule 10b-5**

Similarly, the SEC has failed to allege sufficient facts demonstrating that Mr. Jiang had "actual knowledge" of the alleged violations of Exchange Act Section 10(b) and Exchange Act

Rule 10b-5.  In contrast to stating a claim for a primary violation, in assessing an aiding and abetting claim, courts should not look to the "motive" of the alleged aider and abettor, inasmuch as "[m]otive is not an element of [an] aiding and abetting claim."  *S.E.C. v. Lucent Tech., Inc.*, 610 F. Supp. 2d 342, 363 (D.N.J. 2009).  Rather, a defendant must have a "general awareness of its overall role in the primary violator's illegal scheme."  *S.E.C. v. Espuelas*, No. 06-2435, 2012 WL 5288740, at *6 (S.D.N.Y. Oct. 26, 2012).  As discussed above, with respect to the primary violation, the Complaint substitutes sweeping and unsubstantiated legal conclusions for the factual allegations necessary to state a claim for aiding and abetting liability.  This is insufficient; plaintiffs must allege facts demonstrating actual knowledge of the primary violation.

Throughout the Complaint, the SEC consistently alleges facts falling short of the actual knowledge requirement or, indeed, outright contradicting any inference of actual knowledge. *First*, with respect to the related-party transactions, the Complaint alleges only that there existed "no known or documented business purpose" for the transactions.  Compl. ¶¶ 6, 26, 28–29, 38–40.  The absence of a documented business purpose, however, is not sufficient to establish actual knowledge of an alleged securities violation.  *Second*, the Complaint acknowledges that corporate officials maintained that the related-party transactions were the product of loans and debt between CNEP and company officials, or were otherwise used "to obtain lower prices from vendors."  *Id*. ¶ 38.  Such business purposes undermine Plaintiff's contention that Mr. Jiang had any actual knowledge of any securities violations.  *Third*, the testimony in the deposition that the SEC cites in the Complaint for other purposes, *id*. ¶ 27, further undermines its claims, *see supra* § B(2)(b).  The deposition record clearly reflects Mr. Jiang's understanding that the transferred money was being used solely for purposes of working capital, and that Mr. Jiang never learned or heard rumors to the contrary.  *See* Davis Decl. Ex. A, at 0123:10-16.

3.   **Claims Five and Six Fail to Allege Adequately That Mr. Jiang Substantially Assisted a Primary Violation**

Plaintiff also fails to allege facts demonstrating that Mr. Jiang "substantially assisted" the primary violation.  Recently, the Second Circuit clarified the standard for demonstrating "substantial assistance."  "[T]o satisfy the 'substantial assistance' component of aiding and abetting, the SEC must show that the defendant 'in some sort associate[d] himself with the venture, that he participate[d] in it as in something he wishe[d] to bring about, [and] that he [sought] by his action to make it succeed."  *Apuzzo*, 689 F.3d at 206 (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (Hand., J.)).[3]

In making this determination, plaintiffs must allege more than that the defendant engaged in ministerial tasks at the direction of others.  *See e.g.*, *Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d at 336 (dismissing aiding and abetting claim where "[defendant] was not involved in preparing or reviewing the financial or accounting statements that contained the alleged misstatements or omissions.  [Defendant's] contribution to the filing was limited to gathering backup documentation for [the company's] accountants and auditors, and answering questions about subsequent events and pending litigation against CKP"); *see also Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 29 (2d Cir. 2000) ("The simple providing of normal clearing services to a primary broker who is acting in violation of the law does not make out a case of aiding and abetting against the clearing broker.").  Rather, courts have consistently required plaintiffs to allege that defendant provided additional assistance to the primary violator.  *See, e.g.*, *Espuelas*, 579 F. Supp. 2d at 485 (S.D.N.Y. 2008) (finding substantial assistance where, in addition to sending wire transfers, defendant "affirmed in management representation letters to

---

[3]   Although *Apuzzo* held that plaintiffs need not prove that a defendant's actions were the proximate cause of the primary violation, the court recognized that proximate cause is relevant to the substantial assistance determination. 689 F.3d at 213 n.11 ("This is not to suggest that evidence of proximate cause may not be relevant to identifying when an aider and abettor has provided substantial assistance to a primary violator.").

. . . auditors that all frauds had been disclosed . . . even though he knew that [the company] was improperly recognizing revenue"); *cf. VanCook v. S.E.C.*, 653 F.3d 130, 139 (2d Cir. 2011) (finding Rule 10b-5 liability where defendant "was not 'merely associated' with the late-trading scheme . . . [but] was its architect").  Because the Complaint only alleges that Mr. Jiang engaged in certain administrative tasks—completing wire transfers at the direction of others, "assisting" in drafting CNEP's press releases and filings, and making investor presentations—pursuant to the foregoing case law, the Court should dismiss the Complaint.  Compl. ¶¶ 21, 25–26, 28–29.

As the Complaint recognizes, Mr. Jiang's role in CNEP's management and business operations was limited.  Through its allegations, the Complaint recognizes that Mr. Jiang was not an "architect" or "mastermind" of the alleged scheme, but rather took actions entirely consistent with his role as a salaried employee: Mr. Jiang "assisted" in drafting filings, Compl. ¶ 21, and was "directed" to make bank transfers, *id*. ¶¶ 25, 28–29.  Additionally, the Complaint lacks any detailed factual allegations relating to the ways in which Mr. Jiang allegedly "assisted" in the drafting of any documents, what portions of the documents Mr. Jiang allegedly "assisted" in drafting, or whether the portions of the documents that Mr. Jiang allegedly "assisted" in drafting were materially misleading.  While Mr. Jiang did make "presentations on behalf of CNEP at investor conferences," *id*. ¶ 21, the Complaint fails to allege any statements or actions taken at those unspecified conferences.  The Complaint substitutes broad descriptions and legal conclusions for the type of factual allegations that courts have found are necessary to give rise to legal liability.

Additionally, the Complaint makes no factual allegations whatsoever regarding Mr. Jiang's role or actions with respect to CNEP's books and records or internal controls.  Rather, Plaintiff attempts to smear Mr. Jiang with the bare-bones factual allegations asserted against

*other* defendants.  *See* Compl. ¶¶ 54–55 (citing to preliminary report prepared by a Hong Kong accounting firm determining that *CNEP* lacked internal controls but making no reference to Mr. Jiang).  Because the Complaint fails to allege any facts in support of its claim against Mr. Jiang with respect to CNEP's alleged books and records and internal controls violations—much less the detailed factual allegations required—the Complaint fails to state a claim for aiding and abetting.  Accordingly, the Court should dismiss Claims Five and Six as alleged against Mr. Jiang.

## CONCLUSION

For the foregoing reasons, Mr. Jiang respectfully requests that the Court dismiss the First, Second, Fifth, and Sixth Claims against Mr. Jiang with prejudice for failure to plead fraud with specificity and failure to state any plausible claim, and grant such other relief as this Court deems just and proper.

Dated:   San Francisco, CA
      April 12, 2013

GIBSON, DUNN & CRUTCHER LLP


By: _____ /s/ Thad A. Davis _____

Thad A. Davis (SBN 3009628)
Michael Li-Ming Wong (Admitted *Pro Hac Vice*)
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

Barry Goldsmith (SBN 4857694)
200 Park Avenue
New York, NY 10166-0193
Telephone:    212.351.2440
Facsimile:    212.351.5340

Attorneys for CHAO JIANG