Michael J. Coffino (Admitted Pro *Hac Vice*)
Jaime J. Santos (JS-3361)
COFFINO LAW GROUP, LLP
201 Spear Street, Suite 1100
San Francisco, CA 94105
Telephone (415) 426-3530
Fax (415) 426-3531

Attorneys for Defendant
CHINA NORTHEAST
PETROLEUM HOLDINGS LIMITED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | No. 12-CV-8696 (NRB) ECF |
| Plaintiff, | |
| vs. | |
| CHINA NORTHEAST PETROLEUM HOLDINGS LIMITED; WANG HONGJUN, (a/k/a Hongjun Wang); JU GUIZHI (a/k/a Guizhi Ju); and JIANG CHAO (a/k/a/ Chao Jiang) | **ORAL ARGUMENT REQUESTED** |
| Defendants, | |
| JIANG MENGFU (a/k/a Mingfu Jiang); and SUN JISHUANG (a/k/a Jishuang Sun), | |
| Relief Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF**
**CHINA NORTH EAST PETROLEUM HOLDINGS, LIMITED**
**TO DISMISS COUNTS ONE AND TWO OF THE COMPLAINT**

## I.  INTRODUCTION

In the opening brief, we showed that the Complaint fundamentally failed to meet the exacting requirements for pleading *scienter*.  In the face of this showing, the omissions in the Opposition are conspicuous and noteworthy.

First, Plaintiff utterly ignores the unassailable fact that the Company, shortly after publically announcing its intention to spend money from two capital raises on major asset purchases and payment of debt, did spend very nearly the exact amount (and even a bit more) precisely as promised.  Plaintiff provides no inkling why the Company would be driven to misstate its intention to spend the money raised and then actually spend exactly as stated.  This is not mere "competing inference," although it serves that purpose nicely as well, but a material and undisputed fact that totally undermines the *conclusory* allegation that that the Company acted with *scienter* in its public statements about the intended use of the raised funds.  That the Company acted in full conformity with what they publicly announced ends the *scienter* discussion on underlying fraud claim.

Second, Plaintiff ignores completely allegations *in its Complaint* that the Board was unaware of any of the alleged related party transactions.  Plaintiff thus fails to explain how the Company can at once be villain (by allegedly engaging in third party transactions without public disclosure) and victim (by being unaware of the very misstatements and actions of which they complain).  As we show again, this establishes the absence of any fraudulent intent on the part of the Company.

Third, Plaintiff also downplays the glaring fact that an independent forensic auditor—whose bona fides Plaintiff does not challenge—gave the Company a clean bill of health on any

wrongdoing on the related party transactions that lie at the core of the Complaint.  Plaintiff does not, because it cannot, deny that the auditor found no wrongdoing behind the unreported third-party transactions.  Instead, it chooses to argue facts that are not alleged in the Complaint.

The unvarnished facts are that the Company did nothing untoward, let alone sinister, but instead: (1) told the public it would spend money raised on certain projects and purposes, and did so; (2) trusted its independent forensic auditor to examine the Company's records and provide it with its best work and findings, who in turn found no wrongdoing; (3) was nonetheless surprised to find that related party transactions had occurred; and (4) took swift remedial action.  These facts compel the inescapable conclusion that the Company prioritized disclosure and transparency and that, conversely, Plaintiff cannot meet the *scienter* requirement on any claim against the Company.

This pleading defect is basic.  Plaintiff has enjoyed more than ample time to find facts to fit the law and, respectfully, the *scienter*-based claims against the Company should be dismissed without amendment opportunity.

## II.  ARGUMENT

### A.  Plaintiffs Has Not Met Its Burden In Pleading *Scienter*

#### 1.  Plaintiffs Must Plead Facts Establishing a Strong Inference of *Scienter*

In our opening brief, we showed that the fraud claims alleged by Plaintiff are subject to the heightened pleading standards set by Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)").  In particular, we showed that Plaintiffs must plead facts that rise to a "strong inference" of *scienter* and that the Court must consider *all* inferences, including "plausible nonculpable explanations for the defendant's conduct."  *See* NEP Mem. at 9-10 (citing *Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 323 (2007).  Competing inferences must be considered

and an inference that supports *scienter* must be more than plausible or reasonable, "it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *See* NEP Mem. at 10 (citing cases).

Plaintiff argues it is not bound by that standard, in part, because Congress did not intend that the Private Securities Litigation Reform Act of 1995 ("PSLRA") apply to SEC enforcement. Opp. at 23 n.13. The fact that, in general, the PSLRA does not apply to government actions however, does not help Plaintiff because the Second Circuit has long interpreted Rule 9(b)'s particularity requirement to require that any plaintiff pleading securities fraud plead facts establishing a "strong inference" of *scienter*. *Shields v. Citytrust Bancorp Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994); *In re Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir. 1979); *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 487-88 (S.D.N.Y. 2007).

Further, while the Second Circuit has yet to decide the issue of comparative inferences, at least two courts have held that the *Tellabs* instruction that courts take into account comparative inferences applies to any determination whether the SEC has adequately plead *scienter*. *See e.g. EC v. North Shore Asset Mgmt.*, No. 05 Civ. 2192 (WHP), 2008 WL 1968299, at *7 (S.D.N.Y. May 5, 2008); *SEC v. Boling III,* Civ. A. N. 06-1329(RMC), 2007 WL 2059744, at *4 n.1 (D.D.C.). Indeed, the SEC itself advocated for this approach in its *amicus brief* to the Supreme Court in *Tellabs*. *See* Brief for the United States as Amicus Curiae Supporting Petitioners at 24 (July 13, 2007) (stating "a court will necessarily have to consider whether the facts leave open nonculpable explanations for the defendant's conduct").[1]

---

[1] Even if this Court were to apply the pre-*Tellabs* "strong inference" standard adopted by the Second Circuit for pleading *scienter,* the Complaint still fails. First, as we show, the undisputed facts—in contrast to the conclusory allegations of *scienter*, establish the *absence* of scienter. Second, because Plaintiffs have alleged no single fact that the Company benefited from the alleged fraud, they have not pled motive. When allegations of motive are missing, as here, the burden increases exponentially, and as such, Plaintiffs' *scienter* project becomes very ambitious indeed. *See In re Bristol-Myers Squibb Sec. Litig.*,

This Court, therefore, should not ignore, as Plaintiff does, the competing nonfraudulent inferences that abound in the pleading record.

        2.      Plaintiff Ignores Compelling and Opposing Inferences
              of Non-Fraudulent Intent by The Company

In our opening brief, we showed that Plaintiff fails to plead facts that give rise to a strong inference of *scienter*, especially in light of all reasonable inferences, including "plausible nonculpable explanations" for NEP's conduct.  *See* NEP Mem. at 9-12. [2]  Indeed, the Complaint—and the opposition brief—are utterly devoid of nary a hint as to why the Company spent an amount equal to the offering funds on asset purchases and debt repayment if it did not intend to spend the offering funds on asset purchases and debt repayment as promised.  Nor does the Complaint—and the opposition brief—explain how the Company "engaged in a course of conduct" including related-party transactions, when "neither the Board of Directors nor the Audit Committee was apprised of, much less approved of [related party transactions].  *See* NEP Mem. at 11 (quoting Complaint ¶¶ 6, 42).  This silence betrays an acknowledgement that many of the facts in the pleading record provide a *more compelling* inference that the Company's intent was nonfraudulent and, therefore, without *scienter*.

        a.      Plaintiff Failed to Plead *Scienter* With Respect to Company
              Statements Regarding the Use of Public Capital

---

312 F. Supp. 2d 549, 562 (S.D.N.Y. 2004) ("when motive is not established, the 'strength of the circumstantial allegations must be correspondingly greater'") (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).  Plaintiff not only fails to allege circumstantial allegations of conscious misbehavior or recklessness that are correspondingly greater, but alleges that the Board lacked any knowledge of the alleged misbehavior.  *See infra* at 6.  Therefore, Plaintiff cannot satisfy either reading of the "strong inference" standard for *scienter*.

[2] Plaintiff complains that "strong inference" is not the standard required to prove *scienter* in cases brought on behalf of the SEC (Opp. at 25), but itself argues that there must be facts "giving rise to a strong inference of *scienter*.  Opp at 23 (citing to Rule 9(b) and quoting *Alternative Green Technologies*).

In our opening brief, we showed that Plaintiff's attempt to recast accurate public statements regarding the use of publically raised capital into a fraudulent scheme so blatant it only required the Company, its full Board, its Audit Committee, and its independent auditor to close their eyes to the alleged "real reasons" for the two capital raises, was unjustifiable in light of the actual facts.  NEP Mem. at 10-11.

In response, Plaintiff does nothing more than argue, in a footnote, that the expenditures are no defense to the allegations of material omissions while completely ignoring NEP's showing that the actual expenditures are perfectly in line with the statements made in the Company's publicly filed documents regarding how the Company intended to use the raised funds.  Opp. at 12 n.5.

Further, and critically, Plaintiff ignores that public filings are rife with contrary facts showing that the Company spent an amount nearly equal (but slightly more)[3] than it raised on the projects and plans it publically promised.

For example:

- The Company through its subsidiary, Song Yuan North East Petroleum Technical Service Co., Ltd. ("Song Yuan Technical"), purchased Shengyuan, a Chinese limited liability company in Inner Mongolia in the People's Republic of China with exclusive oilfield exploration and drilling rights to the Durimu oilfield in Inner Mongolia for $43.4 million consisting of RMB 70 million (approximately US$10.6 million) in cash and 5,800,000 shares of the Company's common stock. Exh. 5 at 5.

- The Company through its subsidiary, Song Yuan Technical, purchased Song Yuan Tiancheng Drilling Engineering Co., Ltd., a Chinese limited liability company for $13 million.  Exh. 6 at 2.

- The Company repaid in full its 8% Secured Debenture issued to Lotusbox Investments Limited in the amount of $10.7 million. Exh. 7 at 2.[4]

---

[3]  Our opening brief includes a typo at page 11.  Where it states "NEP spent $38.6 million to purchase…" it should read $34.3 million.  This amount is still more than the $31.9 million raised during the two U.S. capital raises and provides a compelling inference that the money was, in fact, spent on the asset and debt projects as promised.

These facts—which neither the Complaint nor the Opposition dispute—establish, as a matter of law, that a complete lack of any scienter accompanied the prior public statements about how the Company intended to use the raised funds.  This course of conduct—subsequent acts in conformity with prior statements—makes no sense if, as Plaintiff asserts, NEP intended to divert the funds for improper purposes.  Complaint ¶ 2.

What is more, at a minimum, these undisputed facts show a more cogent and compelling inference than the Plaintiff's bait and switch theory, which cannot be sustained.  While the transfer of the monies may be unorthodox in form, the bottom line is that the Company actually spent all of the money as it promised it would, i.e., on asset acquisitions and to payoff debt.  This inference is both reasonable and compelling and does not infer *scienter*.

>    b.    Plaintiff Failed to Plead *Scienter* With Respect to Company Statements Regarding Related Party Transactions

In our opening brief, we showed how Plaintiff's use of contradictory allegations regarding what the Company knew and did not know with respect to related party transactions fatally rubs up against the requirement that courts consider *all* reasonable inferences including "plausible nonculpable explanations for the [Company's] conduct.  NEP Mem. at 10 (citing *Tellabs,* 551 U.S. at 323.  Specifically, we showed that Plaintiff's own statements that "neither the Board of Directors nor the Audit Committee was apprised of, much less approved, the 176 related-party transactions[,]" (Complaint ¶¶ 6, 42) provides a compelling and opposing inference of non-fraudulent intent by the Company.

---

[4]  Plaintiff's complaint of NEP's reliance on documents outside the pleadings is sorely misplaced.  Opp. at 2.  This Court may consider "public disclosure documents required by law to be, and that have been, filed with the SEC."  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citations omitted); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

Plaintiff never addresses this showing and, revealingly, relies upon the very same statement—that the Company did NOT have any knowledge of the alleged transfers initiated by Wang and Ju—to support certain allegations aimed at the individual defendants and not the Company.  *See* Complaint ¶ 42.  Plaintiff cannot have it both ways.

Further, rather than addressing the opposing inference created by the Board's ignorance of any related party transactions head on, Plaintiff attempts to deflect the Court's attention by concocting theories about the accuracy of the auditor's report that brought the transactions to the attention of the Board.  Plaintiff spends over a page and a half (single spaced) focused on admittedly "factual issues to be resolved at trial" regarding the reliability of the JLA report findings regarding related party transactions, the majority of which Plaintiff fails to allege in its Complaint.  Opp. at 15-16; Complaint ¶¶ 36-41.  While on the one hand Plaintiff recognizes that the JLA report found that money Wang and Ju received were used to pay corporate expenses (Opp. at 7), Plaintiff questions those findings based on its own, second-hand and one-continent-removed *belief* of what the findings should have been.  Opp. at 15-16.

But Plaintiff cannot escape the fact that the Board was unaware of the 2009 related party transactions until they learned of the results of the JLA report.  Opp. at 9-10.  Indeed, in Plaintiff's own words "[p]rior to April 2010, neither the Board of Directors nor the Audit Committee had been apprised of  . . . a line item in the financial statements reflecting that $3.89 million was allegedly due to CNEP from a shareholder."  Complaint ¶ 33.  Furthermore, immediately upon receiving the information, the Board commissioned an investigation that led to changes in management and financial controls, even though the report ultimately concluded that there was no misappropriation or misuse of Company funds.  *See* NEP Mem. at 6-8.

The Board and Audit Committee's lack of knowledge and swift remedial action after learning of the transactions provides a compelling and opposing inference of non-fraudulent intent by the Company causing the Complaint to fall far short of pleading *scienter*.

**B.      Even Assuming *Arguendo* that Alleged Misstatements of the Individual Defendants can be Attributed to the Company, the Complaint Fails Adequately to Plead Their *Scienter***

As we showed in our opening brief, Plaintiffs never allege that particular statements or conduct by individuals are attributable to the Company and, therefore, leave open to interpretation that the alleged actions are attributable to the individuals acting outside any capacity they may have had in the Company.  NEP Mem. at 12-13.

In response, Plaintiffs argue that alleged knowledge on the part of certain officers and directors at the time of alleged acts trumps *later* knowledge by different officers and directors. Opp. at 25.  Plaintiff misses the point and, again, ignores its own allegations that neither the Board of Directors nor the Audit Committee was apprised of, much less approved the conduct of at the time the of the alleged transfers.  Complaint ¶¶ 6 & 42.  The contemporaneous lack of knowledge on the part of the Board provides a compelling inference that there was no *scienter* on the part of the Company.

Further, we showed that even if the allegations of individual conduct is attributable to the Company, Plaintiffs failed to meet stringent pleading standards required under the law, in part because Plaintiffs' ignore express finding by JLA that there was "no evidence" that Mr. Wang and Ms. Ju ever improperly received Company funds for personal use.  NEP Mem. at 13.

Plaintiff's only response, stated more fully *supra* at 6-7, is to question the JLA findings, which Plaintiff does not deny represented news to the Company and on which the Company relied and acted on accordingly.  *See* NEP Mem. at 6-8.  What is more, Plaintiff does not

challenge the independence, veracity and bone fides of John Lees & Associates, the forensic accounting firm who conducted the investigation.

That Plaintiff somehow disagrees with the conclusions of the JLA report is of no moment on the question of *scienter*.  The pleading record is clear that the Board and the Audit Committee were unaware of the 176 related transactions, acted swiftly to investigate them and relied in good faith on the findings that showed no wrongdoing.  These facts cogently show a complete lack of non-fraudulent intent on the part of the Company.

Finally, as before, we incorporate by reference showings of defendants Jiang and Wang in their respective motions to dismiss and the reply memoranda that, among other things, Plaintiff failed to plead fraud with particularity.

## V.    CONCLUSION

We respectfully request that the Court dismiss Counts 1 and 2 of the Complaint against the Company.  Plaintiff cannot plead *scienter* against the Company to maintain either claim. Plaintiff has investigated the underlying circumstances for almost three years, affording Plaintiff full opportunity to marshal facts to support its *scienter* theories against the Company.  The Court, accordingly, should dismiss these claims without amendment opportunity.

Dated: May 31, 2013                              Respectfully Submitted,

By:     /s/ Michael J. Coffino

MICHAEL J. COFFINO
Coffino Law Group, LLP
201 Spear Street, Suite 1100
San Francisco, CA 94105
Tel:  415-426-3530
Fax: 415-426-3531
mcoffino@coffinolawgroup.com