UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States Securities & Exchange Commission,<br><br>            Plaintiff,<br><br>       v.<br><br>China North East Petroleum Holdings Limited; Wang Hongjun (a/k/a Hongjun Wang); Ju Guizhi (a/k/a Guizhi Ju); and Jiang Chao (a/k/a Chao Jiang),<br><br>            Defendants,<br><br>Jiang Mingfu (a/k/a Mingfu Jiang); and Sun Jishuang (a/k/a Jishuang Sun),<br><br>            Relief Defendants. | CASE NO. 12-CV-8696 (NRB)<br><br>ECF Case<br><br>**Oral argument requested** |

**DEFENDANT WANG HONGJUN AND RELIEF DEFENDANT SUN JISHUANG'S REPLY BRIEF IN SUPPORT OF THEIR JOINT MOTION TO DISMISS WITH PREJUDICE**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The Fraud Claims Should Be Dismissed as to Mr. Wang ..................................... 2

        A.    The Complaint Fails to Plead with Particularity that Company Funds Were Diverted to Mr. Wang for his Personal Use .......................... 2

        B.    The Complaint Fails to Plead with Particularity that Mr. Wang Acted with the Requisite Scienter ............................................................... 5

        C.    The Complaint Fails to Plead with Particularity that Mr. Wang Knew of or Understood the Applicable Accounting Rules Allegedly Violated .................................................................................... 7

    II.    The SEC Cannot Plead Scheme Liability Where the Allegations Against Mr. Wang Are of Misstatements and Omissions .................................................... 8

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

Page

### CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................. 1, 4, 5

*Demaria v. Andersen,*
    153 F. Supp. 2d 300 (S.D.N.Y. 2001) .................................................................................. 6

*ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,*
    553 F.3d 187 (2d Cir. 2009) ............................................................................................ 5, 8

*George v. China Automotive Sys., Inc.,*
    No. 11 Civ. 7533, 2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012) .......................................... 8

*In re Am. Int'l Refinery,*
    402 B.R. 728 (W.D. La. 2008) ............................................................................................ 2

*In re Smith Barney Transfer Agent Litig.,*
    884 F. Supp. 2d 152 (S.D.N.Y. 2012) ................................................................................. 8

*In re WorldCom, Inc. Sec. Litig.,*
    346 F. Supp. 2d 628 (S.D.N.Y. 2004) .............................................................................. 6, 7

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000) ................................................................................................ 8

*O'Brien v. Nat'l Property Analysts Partners,*
    719 F. Supp. 222 (S.D.N.Y. 1989) ...................................................................................... 7

*SEC v. Escala,*
    No. 09 Civ. 2646, 2009 WL 2365548 (S.D.N.Y. July 31, 2009) ......................................... 7

*SEC v. George,*
    426 F.3d 786 (6th Cir. 2005) ............................................................................................... 6

*SEC v. Kelly,*
    817 F. Supp. 2d 340 (S.D.N.Y. 2011) ................................................................................. 8

*SEC v. Lucent Tech. Inc.,*
    610 F. Supp. 2d 342 (D.N.J. 2009) .................................................................................. 7, 8

*Shemian v. Research in Motion, Ltd.,*
    No. 11 Civ. 4068 (RJS), 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) .............................. 7

*Thompson v. Illinois Dept. of Prof'l Regulation,*
    300 F.3d 750 (7th Cir. 2002) ............................................................................................... 4

*Tradition Chile Agentes de Valores Ltda v. ICAP Sec. USA LLC,*
    No. 09 Civ. 10343, 2010 WL 4739938 (S.D.N.Y. Nov. 5, 2010) ........................................ 2

## TABLE OF AUTHORITIES
(Continued)

**Page**

### RULES AND REGULATIONS

Fed. R. Civ. P.
  9(b) ............................................................................................................... *passim*
  12(b)(6) ................................................................................................................. 8

SEC Rule
  10b-5 ................................................................................................................... 8

**PRELIMINARY STATEMENT**

The SEC's opposition brief exemplifies the deficiencies of the claims pled against Mr. Wang in the Complaint. Rather than detail how the Complaint states particularized allegations of wrongful conduct by Mr. Wang, the SEC instead hides behind an "omnibus" opposition which, like the defective Complaint itself, repeatedly refers collectively to the corporate and individual defendants in an effort to hide the Complaint's greatest fatal flaw: that the fraud allegations as to Mr. Wang are nowhere pled with the particularity required by Fed. R. Civ. P. 9(b), and permit no reasonable inference stronger than the "mere possibility of misconduct" by Mr. Wang, requiring dismissal. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

In recognition of this fatal flaw in the Complaint, the SEC begs the Court in its opposition to "read the complaint as a whole," not to consider the defendants' conduct "in isolation," and not to permit Mr. Wang to "finely parse the Commission's allegations." Oppn. p. 2. In effect, the SEC urges the Court to ignore the pleading requirements as to Mr. Wang, including the Rule 9(b) requirement that fraud claims must be pled with particularity as to each defendant, and are not satisfied by generalized fraud averments against collective "defendants." Moreover, in one crucial area where the Complaint is wholly deficient—that nowhere does the Complaint even reference the applicable accounting rules governing the related-party transactions allegedly violated, much less plead Mr. Wang's knowing violation of those rules—the SEC now impermissibly attempts to rehabilitate this glaring deficiency by addressing for the first time in its opposition brief the applicable accounting rules Mr. Wang purportedly violated. Oppn. pp. 12–13.

As detailed in Part I below, the Complaint's First and Second fraud claims should be dismissed as to Mr. Wang for failure to plead adequately his (1) personal use of CNEP investment funds; (2) involvement in or knowledge of the U.S. transfers complained of (including the single $300,000 transfer made to his wife by defendant Mr. Chao at the direction of defendant Ms. Ju); or (3) the requisite scienter, including a total failure to address the related-party transaction accounting rules allegedly violated, or Mr. Wang's purported knowing violation of them. As detailed in Part II below, the scheme liability portion of the Second fraud claim should also be dismissed as to Mr. Wang

because the "core misconduct" alleged against Mr. Wang are his alleged misstatements or omissions in CNEP's public filings.   We also respectfully refer the Court to the additional arguments raised in Mr. Wang's and Ms. Sun's initial brief in support of this Motion to address the remaining bases for dismissal.

## ARGUMENT

### I.     The Fraud Claims Should Be Dismissed as to Mr. Wang.

The First and Second fraud claims against Mr. Wang focus on allegedly unlawful and undisclosed related-party transactions that purportedly improperly diverted CNEP funds raised in the U.S. public offerings to Mr. Wang's personal use.  *See* Compl. ¶¶ 3–4, 32–42.  The Complaint fails to plead with sufficient particularity that (1) any of these related-party transactions diverted CNEP funds to Mr. Wang for his personal use; (2) that Mr. Wang acted with the requisite scienter; or (3) that Mr. Wang knew of or understood the applicable accounting rules allegedly violated.

### A.     The Complaint Fails to Plead with Particularity that Company Funds Were Diverted to Mr. Wang for his Personal Use.

The SEC's opposition brief states repeatedly in a conclusory manner that the collective "Defendants raided the corporate till" (Oppn. p. 1); "Defendants were using CNEP's bank accounts as their personal piggy bank or, at best, failing to follow minimal standards of corporate record-keeping" (Oppn. p. 13); "Defendants diverted offering proceeds to company insiders and their family members with no known business justification" (Oppn. p. 14); and that "Defendants engaged in a fraudulent scheme to raise capital in the U.S. markets and that they knowingly or recklessly diverted offering proceeds for personal and other improper purposes" (Oppn. p. 19).  These generalized allegations that conflate the acts of all defendants in the collective and then attribute them to Mr. Wang do not meet the Rule 9(b) requirement that fraud be pled with particularity as to each defendant.  *See Tradition Chile Agentes de Valores Ltda v. ICAP Sec. USA LLC*, No. 09 Civ. 10343 (WHP), 2010 WL 4739938 at *4 (S.D.N.Y. Nov. 5, 2010) (granting motion to dismiss fraud claims where "the Complaint simply makes collective references to 'Defendants'"); *In re Am. Int'l Refinery*, 402 B.R. 728, 738 (W.D. La. 2008)

("The allegations in the Complaint that refer to Defendants collectively do not satisfy the heightened pleading standards of Rule 9(b) ….").

In the few times the SEC focuses more specifically on what Mr. Wang allegedly did and knew rather than lump him with the collective "defendants," the SEC's opposition brief points to the Complaint's allegations that among the 176 related-party transactions identified in the John Lees Associates report, these 176 related-party transactions "included the transfer of $28 million in cash to Wang and Ju, $11 million loaned to CNEP or paid to third parties on behalf of Wang and Ju, and $20 million-worth of accounting adjustments, which reduced the debt owed by Wang and Ju to CNEP." Oppn. p. 4. The SEC's opposition brief similarly contends that "Wang routinely diverted CNEP funds to his own bank account." Oppn. p. 22. Again, these specific allegations as to Mr. Wang are a direct reference to the 176 related-party transactions identified in the John Lees Associates report, whose proceeds went "to the personal accounts of Ms. Ju and Mr. Wang [and] have been recorded in the JU C/A and the WANG C/A . . . ." Dkt. No. 33, Declaration of Geoffrey H. Coll, Exh. 1, p. 11, ¶ 1.4.2; p. 98, ¶ 10.1.36. The John Lees Associates report identifies the "WANG C/A" as a "current account with Mr. Wang in the books of North East Technical, Yu Qiao or Long De," three wholly-owned subsidiaries of CNEP, not a private bank account of Mr. Wang held at a bank or other financial institution outside of the company, as misleadingly implied by the SEC. *Id*. at pp. 3–4, ¶ 1.2.1.

Importantly, nowhere does the Complaint allege that any of these 176 related-party transactions made to either the "WANG C/A" or the "JU C/A" current accounts at a wholly-owned subsidiary of CNEP were made to Mr. Wang or his mother for their personal use or benefit. To the contrary, the John Lees Associates report made specific findings that all the monies sent to Mr. Wang or his mother in these 176 related-party transactions were "applied to make payments related to the operations of the Group [CNEP and its subsidiaries]," and there was "no evidence to suggest that funds transferred to either Ms. Ju or Mr. Wang were withdrawn for her/his personal use." *Id*. at p. 11, ¶ 1.4.2; p. 98, ¶ 10.1.36.

After relying heavily on self-selected portions of the John Lees Associates report in its Complaint (Complaint ¶¶ 35-42, 46), the SEC now performs a rapid about-face in an effort to discredit

the report and undercut its unambiguous findings that there is "no evidence" that Mr. Wang or Ms. Ju improperly received funds from the company "for her/his personal use." *Id.* While grudgingly acknowledging this unambiguous finding exonerating Mr. Wang and Ms. Ju that the SEC had previously chosen to conveniently overlook in its Complaint, the SEC now devotes a full, single-spaced page in its opposition brief to *discrediting* the very same James Lees Associates report that it previously relied upon. Oppn. pp. 15–16. Respectfully, the SEC cannot have it both ways. This Court can and should rely on the unambiguous findings of that report that none of the funds transferred to Mr. Wang's current account at a subsidiary of CNEP were used for his personal use to dismiss the SEC's fraud claims against Mr. Wang. *See Thompson v. Illinois Dept. of Prof'l Regulation,* 300 F.3d 750, 754 (7th Cir. 2002) ("[t]he fact remains that where a plaintiff . . . relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.")

Pleading by innuendo, the SEC would instead have the Court blindly conclude that any related-party transaction made to Mr. Wang's current account at CNEP automatically equated into Mr. Wang "raiding the corporate till" or "diverting company proceeds to his personal use," directly contrary to the findings of the John Lees Associates report exonerating Mr. Wang on this issue. Without particularized allegations that Mr. Wang used the funds received from these 176 related-party transactions into his current account at a CNEP subsidiary for his own personal use or benefit, the Complaint's fraud allegations as to Mr. Wang based on these transactions fail to satisfy the pleading requirements of Rule 9(b), and permit no reasonable inference stronger than the "mere possibility of misconduct," requiring dismissal. *Iqbal*, 556 U.S. at 679.

Finally, in addition to the 176 related-party transactions addressed above, the Complaint also makes separate allegations that the proceeds of the U.S. offerings in CNEP's U.S. bank account were improperly transferred to insiders. *See* Compl. ¶¶ 25–31; Oppn. pp. 3, 19, 21–22. The Complaint's own allegations related to these U.S. transfers fail to plead that Mr. Wang had any involvement in any of these allegedly improper transfers from CNEP's U.S. bank account, other than that his wife defendant Ms. Sun received $300,000 in one of the transfers that she used in the purchase of her home

in California.[1]  That single $300,000 transfer, however, is specifically alleged in the Complaint to have been directed by defendant Ms. Ju, and then carried out by defendant Mr. Chao, with no allegation at all of any involvement or knowledge of the transfer by Mr. Wang.  *See* Compl. ¶ 28.  In its opposition brief, the SEC responds to this utter failure to plead Mr. Wang's involvement in or knowledge of this $300,000 transfer by now arguing that it was "the same house that Wang was 'visiting' when he was served with the Complaint," and that because "his mother was ordering defendant [Mr. Chao] to send his wife money, the complaint is certainly sufficient in raising the inference that the Chairman of the company knew of this activity."  Oppn. pp. 21–22.  If the SEC, after a two-year investigation, had any specific facts of Mr. Wang's knowledge of or involvement in this $300,000 transfer, they had an obligation to plead those facts with particularity in their Complaint, not rely on vague innuendo by association.  The SEC's reliance on these kinds of tepid arguments against Mr. Wang fail to meet the pleading requirements of Rule 9(b), permit no reasonable inference stronger than the "mere possibility of misconduct," and should be dismissed.  *Iqbal,* 556 U.S. at 679.

### B. The Complaint Fails to Plead with Particularity that Mr. Wang Acted with the Requisite Scienter.

The Complaint's First and Second fraud claims also fail to plead with particularity that Mr. Wang acted with scienter.  "The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,* 553 F.3d 187, 198 (2d Cir. 2009).

The only allegations of Mr. Wang's motive apparent from the Complaint are that he desired to act in the best interests of CNEP.  As discussed above, the John Lees Associates report explicitly found that Mr. Wang did not make use of any of the transferred company funds personally. Mr. Wang therefore had no motive to hide these related-party transactions given that they were not for his

---

[1]  The other U.S. transfers are also all alleged to be authorized or directed by defendant Mr. Chao, with no involvement or knowledge by Mr. Wang of any of these other U.S. transfers.  *See* Compl. ¶¶ 25–27, 29–30.  The only reference to Mr. Wang in connection with these U.S. transfers is that he "had signature authority over the [U.S.] account," but nowhere does the Complaint plead that Mr. Wang ever used this authority.  Compl. ¶ 25.

personal use. Absent evidence that Mr. Wang diverted these funds for his personal use, as the largest shareholder in CNEP, Mr. Wang had the same motive as other shareholders to act in the best interests of the company and to insure that CNEP's accounting and financial filings were as accurate as possible.

The SEC cites in its opposition to *SEC v. George*, 426 F.3d 786 (6th Cir. 2005), for the proposition that "diverting shareholder money to *personal use* is a 'fact that itself establishes the requisite state of mind for committing securities fraud.'" Oppn. p. 23 (emphasis added). Unlike Mr. Wang, who was exonerated by the James Lee Associates report on this issue, the *SEC v. George* case involved the very different circumstances of a defendant who did not "deny that he spent investor funds on personal expenses." *SEC v. George*, 426 F.3d at 795.

The only argument offered by the SEC in its opposition brief that Mr. Wang acted with conscious misbehavior or recklessness relate to his role in signing CNEP's SEC filings: Mr. Wang, who signed the filings as CEO of CNEP, allegedly "knew the prospectus filed with the SEC and other documents promised the offering funds would be used for corporate, not personal, purposes, and so knew, or was reckless in not knowing, that material misstatements had gone uncorrected." Oppn. p. 26.

Again, as discussed above, the John Lees Associates report made specific findings that all the monies sent to either Mr. Wang or his mother in 2009 were "applied to make payments related to the operations of the Group [CNEP and its subsidiaries]." The 176 related-party transactions therefore were for business purposes, fully consistent with the statements in the offering documents and related announcements that the proceeds of the offerings would be used "for working capital purposes." Courts have consistently held that such broad language as "used for working capital" cannot be the basis for an alleged false and misleading statement where the funds actually were used for business operations. *See Demaria v. Andersen,* 153 F. Supp. 2d 300, 313 (S.D.N.Y. 2001) (granting a motion to dismiss and holding that a statement in Prospectus that money raised would be "'used for working capital' . . . does not constitute a misstatement because a function of working capital is to fund operations."); *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 697 (S.D.N.Y. 2004) ("[t]he disclosure that the proceeds would be used for 'general corporate purposes' was broad enough to include the funding of negative cash flow.").

### C.  The Complaint Fails to Plead with Particularity that Mr. Wang Knew of or Understood the Applicable Accounting Rules Allegedly Violated.

The SEC's opposition brief also fails to even acknowledge the complete absence from the Complaint of any mention of the applicable accounting rules governing the related-party transactions allegedly violated, nor does the SEC in opposition address the complete absence of any allegations that Mr. Wang understood these accounting rules and knowingly violated them.  Without any allegations that Mr. Wang knowingly violated the accounting rules governing related-party transactions, the fraud claims should be dismissed as to Mr. Wang because the SEC has not adequately pled Mr. Wang's fraudulent intent.  *SEC v. Escala*, No. 09 Civ. 2646 (DLC), 2009 WL 2365548, at *14 (S.D.N.Y. July 31, 2009) (denying a motion to dismiss only where "[t]he facts the SEC has pled … allege more than just a violation of GAAP and FAS 57 without corresponding intent; they allege a *knowing* violation of the [related-party transaction] reporting requirement, which supplies the necessary inference of fraudulent intent." (emphasis added).)

The SEC now impermissibly attempts to rehabilitate this deficiency in the Complaint by addressing for the first time in its opposition brief the applicable accounting rules governing related-party transactions.  Oppn. pp. 12–13.  This is too little, too late.  The SEC is precluded from attempting to rehabilitate its deficient Complaint in this manner because "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *O'Brien v. Nat'l Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (granting motion to dismiss); *see also Shemian v. Research in Motion, Ltd.*, No. 11 Civ. 4068 (RJS), 2013 WL 1285779, at *14 (S.D.N.Y. Mar. 29, 2013) (granting motion to dismiss, where Plaintiff failed to raise an additional allegation in support of his § 10(b) scienter argument "until his filing of opposition papers.")

Relying on language taken out of context from a district-court opinion in New Jersey, the SEC also argues that "the securities laws do not require that a defendant know the precise accounting treatment that would have been applied before [he] can have the requisite scienter; the SEC need only demonstrate that [a defendant] knew of facts that contradicted the substance of the reported accounting."  Oppn. p. 17, *quoting SEC v. Lucent Tech. Inc.,* 610 F. Supp. 2d 342, 362 (D.N.J. 2009).  Plaintiff's complaint in *SEC v. Lucent Tech., Inc.*, however, specifically alleged that the applicable

accounting rules governing revenue recognition had been violated when the defendant gave oral assurances outside the terms of a written contract, and the Court found ample evidence that the defendant "knew enough about accounting rules to know that it was improper not to disclose the side deals she made." 610 F. Supp. 2d at 362. Here, the Complaint does not even bother to mention the applicable accounting rules governing related-party transactions, much less allege any understanding or awareness of even the substance of those rules by Mr. Wang. *ECA and Local 134 IBEW*, 553 F.3d at 200 ("[a]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim . . . [o]nly where such allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient.") (quoting *Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir. 2000)); *accord George v. China Automotive Sys., Inc.*, No. 11 Civ. 7533 (KBF), 2012 WL 3205062, at *13 (S.D.N.Y. Aug. 8, 2012).

## II. The SEC Cannot Plead Scheme Liability Where the Allegations Against Mr. Wang Are of Misstatements and Omissions.

The Complaint also impermissibly attempts to plead both misstatement/omission liability under Rule 10b-5(b) *and* scheme liability under Rule 10b-5(a) and (c). Compl.¶¶ 61–62. The SEC cannot proceed with scheme liability claims where the allegations actually pertain to misstatements or omissions, and courts in this district have admonished the SEC for attempting to do so. *SEC v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011). Here, the SEC in its opposition brief devotes an entire single-spaced page to detailing the alleged misrepresentation and omissions made by Mr. Wang in public offering documents, underscoring that the "core misconduct" alleged against Mr. Wang are unquestionably based on those alleged misstatements and omissions. Oppn. p. 5. "Rather, '(s)cheme liability under subsections (a) and (c) of Rule 10b–5 hinges on the performance of an inherently deceptive act that is *distinct* from an alleged misstatement.'" *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 161 (S.D.N.Y. 2012) (citing *SEC v. Kelly*, 817 F. Supp. 2d at 344) (emphasis added.)

The SEC argues in its opposition brief that the "core misconduct [alleged to comprise scheme liability] is the transfer of offering proceeds from corporate coffers to personal accounts." Oppn. p. 20.

As discussed above, *supra*, the Complaint's own allegations related to these U.S. transfers fail to plead that Mr. Wang had any involvement in any of these allegedly improper transfers from CNEP's U.S. bank account, and nowhere alleges that Mr. Wang used or directed the use of offering proceeds or corporate funds for his or anyone's personal use. Under these circumstances, the scheme liability claims against Mr. Wang must be dismissed because the "core misconduct" alleged against Mr. Wang pertains to his misstatements or omissions in the offering documents.

## CONCLUSION

For the foregoing reasons and those contained in Mr. Wang's and Ms. Sun's initial brief, this Court should grant the moving defendants' Rule 12(b)(6) motion to dismiss the Complaint with prejudice for failure to state a claim upon which relief can be granted.

May 31, 2013

Respectfully submitted,

Schiff Hardin LLP
666 Fifth Avenue
New York, NY 10103
(212) 753-5000

By: */s/ Geoffrey H. Coll*
    Geoffrey H. Coll
    SDNY Bar No. GC2020

Ralph De Martino
*Pro hac vice admission pending*
Leslie A. Maria
*Pro hac vice admission pending*
Schiff Hardin LLP
901 K Street, NW
Washington, DC 20001
(202) 778-6400

Attorneys for Defendant Wang Hongjun and Relief Defendant Sun Jishuang

## PROOF OF SERVICE

I, the undersigned, declare:

I am a resident of the State of California, employed in San Francisco County, California. I am over the age of eighteen (18) years, and not a party to the within action. I am an employee of Schiff Hardin LLP, and my business address is One Market, Spear Street Tower, Thirty Second Floor, San Francisco, California 94105.

On the date below, I caused to be served the following document(s):

**DEFENDANT WANG HONGJUN AND RELIEF DEFENDANT SUN JISHUANG'S REPLY BRIEF IN SUPPORT OF THEIR JOINT MOTION TO DISMISS WITH PREJUDICE**

on the parties involved addressed as follows:

☒  BY E-FILING: By electronically serving the document(s) listed above via CM/ECF on the recipients designed on the Transaction Receipt located on the CM/ECF website.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 31, 2013, at San Francisco, California.

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Dawn M. Bierman*
　　　　　　　　　　　　　　　　　　　　　　　　Dawn M. Bierman