UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
:
UNITED STATES SECURITIES AND :
EXCHANGE COMMISSION, :
:
        Plaintiff, :
:
    vs. :
:
CHINA NORTHEAST PETROLEUM : No. 12 CV 8696 (NRB)
HOLDINGS LIMITED; WANG HONGJUN :
(a/k/a Hongjun Wang); JU GUIZHI (a/k/a : ECF Case
Guizhi Ju); and JIANG CHAO (a/k/a Chao :
Jiang), : **ORAL ARGUMENT REQUESTED**
:
        Defendants, :
:
JIANG MINGFU (a/k/a Mingfu Jiang); and :
SUN JISHUANG (a/k/a Jishuang Sun), :
:
        Relief Defendants. :
:
:
---------------------------------------------------------x

# DEFENDANT CHAO JIANG'S REPLY IN SUPPORT OF MOTION TO DISMISS <u>PLAINTIFF'S COMPLAINT WITH PREJUDICE</u>

                       GIBSON, DUNN & CRUTCHER LLP
                       THAD A. DAVIS
                       MICHAEL LI-MING WONG
                       555 Mission Street, Suite 3000
                       San Francisco, CA 94105-0921
                       Telephone:   415.393.8200
                       Facsimile:    415.393.8306

                       BARRY GOLDSMITH
                       200 Park Avenue
                       New York, NY 10166-0193
                       Telephone:   212.351.2440
                       Facsimile:    212.351.5340
                       *Attorneys for Mr. Chao Jiang*

**TABLE OF CONTENTS**

                                                                                                                          **Page**

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    ARGUMENT ...................................................................................................................2

         A.     The Court Should Dismiss Claims One And Two For Failure To Allege Any Fraudulent Conduct Or The Relevant State Of Mind Against Mr. Jiang ...................................................................................................................2

                 1.     Plaintiff Has Not Adequately Pleaded "Scheme Liability" Because It Seeks To Impose Liability For Alleged Misrepresentations And Omissions ...................................................................................................3

                 2.     Plaintiff Fails To Allege That Mr. Jiang Participated In Fraudulent Conduct ...................................................................................................4

                 3.     Plaintiff Fails to Plead That Mr. Jiang Had The Requisite State of Mind ...................................................................................................5

         B.     The Court Should Dismiss Claims Five and Six For Failure To Allege Properly Aiding And Abetting Liability ...............................................................7

                 1.     Actual Knowledge Is The Standard For Aiding And Abetting Liability ...................................................................................................8

                 2.     The Complaint Fails To Allege Adequately That Mr. Jiang Had Actual Knowledge Of A Primary Violation ...............................................9

                 3.     The Complaint Fails To Allege Adequately That Mr. Jiang Substantially Assisted A Primary Violation ............................................10

III.   CONCLUSION ...............................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Advanced Battery Techs., Inc. Secs. Litig.*,
   No. 11 Civ. 2279, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) .............................................. 6

*Lowry v. SEC*,
   340 F.3d 501 (8th Cir. 2003) ...................................................................................................... 6

*SEC v. Apuzzo*,
   689 F.3d 204 (2d Cir. 2012) .................................................................................................. 8, 10

*SEC v. Cedric Kushner Promotions, Inc.*,
   417 F. Supp. 2d 326 (S.D.N.Y. 2006) ......................................................................................... 9

*SEC v. Collins & Aikman Corp.*,
   524 F. Supp. 2d 477 (S.D.N.Y. 2007) ......................................................................................... 5

*SEC v. Espuelas (Espuelas I)*,
   579 F. Supp. 2d 461 (S.D.N.Y. 2008) .................................................................................... 9, 10

*SEC v. Espuelas (Espuelas II)*,
   698 F. Supp. 2d 415 (S.D.N.Y. 2010) ......................................................................................... 9

*SEC v. First Jersey Secs., Inc.*,
   101 F.3d 1450 (2d Cir. 1996) ...................................................................................................... 2

*SEC v. George*,
   426 F.3d 786 (6th Cir. 2005) ...................................................................................................... 6

*SEC v. Infinity Grp. Co.*,
   212 F.3d 180 (3d Cir. 2000) ........................................................................................................ 6

*SEC v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011) ......................................................................................... 3

*SEC v. KPMG LLP*,
   412 F. Supp. 2d 349 (S.D.N.Y. 2006) ................................................................................ 3, 8, 9

*SEC v. McNulty*,
   No. 94 Civ. 7114, 1996 WL 422259 (S.D.N.Y. July 29, 1996) .................................................. 4

*SEC v. One Wall St., Inc.*,
   No. 06 Civ. 4217, 2008 WL 5082294 (E.D.N.Y. Nov. 26, 2008) .............................................. 4

*SEC v. Opulentica*,
   479 F. Supp. 2d 319 (S.D.N.Y. 2007) ......................................................................................... 6

*SEC v. Stanard*,
   No. 06 Civ. 7736, 2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) .................................................. 8

*United States v. Aloi*,
   511 F.2d 585 (2d Cir. 1975) ........................................................................................................ 4

## I. PRELIMINARY STATEMENT

The United States Securities and Exchange Commission ("Plaintiff," or the "SEC") has alleged that Mr. Chao Jiang intentionally schemed to defraud investors, in violation of securities laws, for the purpose of lining the pockets of those other than himself. In its Opposition brief, Plaintiff utterly fails to identify properly-pleaded facts supporting its assertion that Mr. Jiang—as opposed to his superiors at China Northeast Petroleum Holdings Limited ("CNEP" or the "Company")—intentionally participated in a scheme to make false statements to the public. Instead, Plaintiff weakly contends that simply because Mr. Jiang acted at the direction of his superiors—the highest ranking officials within the Company—in performing ministerial tasks, it automatically follows that Mr. Jiang is culpable in any alleged scheme to defraud the public, with the requisite state of mind. The disconnect in Plaintiff's argument is manifest, and the argument is completely unsupported by case law.

Forced to confront the paucity of allegations in its Complaint, Plaintiff improperly injects new facts into its Opposition, facts found nowhere in the Complaint itself. For example:

| SEC's Opposition states: | What the Complaint actually alleges: |
|---|---|
| • "The complaint alleges that . . . defendant Jiang . . . 'engaged in numerous undisclosed, related-party transactions involving CNEP.'" Opp'n at 4 (citing Compl. ¶ 3) | • The related-party transactions involved defendants Guizhi Ju and Hongjun Wang, *not* Mr. Jiang. *See* Compl. ¶ 3. |
| • Mr. Jiang appeared at road shows "to sell the offering." Opp'n at 5. | • Does *not* plead why Mr. Jiang attended the road shows or any actions he allegedly took once in attendance. *See* Compl. ¶ 21. |
| • Mr. Jiang "put his name on press releases . . . ." Opp'n at 5. | • This newfound allegation is nowhere to be found in the Complaint. |
| • Mr. Jiang "effected large transfers . . . apparently without raising any red flags . . . ." Opp'n at 30. | • Makes *no* allegations regarding what actions Mr. Jiang took—or failed to take—regarding the propriety of the transactions. |

Plaintiff does not, and cannot, point to specific facts in the Complaint evidencing that Mr. Jiang played a knowing and intentional role in the alleged fraud, instead of merely carrying out the directives of his superiors and faithfully discharging his responsibilities as a CNEP employee. Accordingly, even with these new allegations, Plaintiff is left to make circular and conclusory arguments, such as: "The conduct at issue in this case is inherently fraudulent." Opp'n at 1. At base, this is an implied admission that the SEC has not properly pleaded its case. The Court should dismiss the Complaint as to Mr. Jiang.

## II.     ARGUMENT

**A.     The Court Should Dismiss Claims One And Two For Failure To Allege Any Fraudulent Conduct Or The Relevant State Of Mind Against Mr. Jiang[1]**

Despite Plaintiff's efforts to saddle Mr. Jiang with the allegations that it makes against *other* defendants, Plaintiff nevertheless fails to plead that *Mr. Jiang*—as opposed to his co-defendants—engaged in fraudulent conduct necessary to impose "scheme liability." And while Plaintiff now argues in its Opposition that the conduct alleged is "inherently" fraudulent, the case law to which Plaintiff cites (discussed below) does not in fact support such a broad, ill-pleaded, and ultimately meritless, argument. Furthermore, Claims One and Two are deficient because Plaintiff fails to allege that Mr. Jiang intended for the funds allegedly transferred to Mr. Mingfu Jiang ("Mingfu") to be earmarked for personal purposes (*i.e.*, that Mr. Jiang had any motive to engage in the alleged conduct), or that Mr. Jiang knew—or had reason to know—that any monetary transfers he allegedly effected at Ms. Ju's direction were anything but proper business transactions. These elemental failings are fatal to Plaintiff's Complaint.

---

[1] Plaintiff alleges in Counts One and Two that Mr. Jiang violated Section 17(a)(1) and (3) of the Securities Act and Rule 10b-5(a) and (c) promulgated pursuant to Section 10(b) of the Exchange Act, respectively. In the interests of brevity, this motion will treat claims under Rule 10b-5(a) and (c) the same as claims under Section 17(a)(1) and (3). *See, e.g,. SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996).

2

1.  **Plaintiff Has Not Adequately Pleaded "Scheme Liability" Because It Seeks To Impose Liability For Alleged Misrepresentations And Omissions**

In Claims One and Two, Plaintiff alleges that Mr. Jiang participated in a fraudulent "scheme." But where, as here, the "primary purpose and effect of a purported scheme is to make a public misrepresentation or omission, courts have routinely rejected the SEC's attempt to bypass the elements necessary to impose 'misstatement' liability . . . by labeling the alleged misconduct a 'scheme' . . . .'" *SEC v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011).

*First*, conduct is not actionable as a "scheme" if it is deceptive only due to related misstatements or omissions. *See Kelly*, 817 F. Supp. 2d at 344. Such is the case here, where the alleged related-party transactions were only deceptive insofar as the destination of the funds was allegedly misrepresented or inadequately disclosed in public filings. Compl. ¶¶ 20-23. Indeed, the Opposition impliedly concedes that related-party transactions—such as those that allegedly occurred here—are not inherently deceptive. *See* Opp'n at 12 (citing Regulation S-K, Item 404(a) and FASB Accounting Standards Codification 850 for the proposition that related-party transactions should be *disclosed*, not *prohibited*). But the SEC notably has *not* brought a misrepresentation or omission claim against Mr. Jiang—nor can it—because it has not pleaded any misstatement or omission committed by Mr. Jiang. And the SEC cannot evade the burden necessary to establish such a claim under the guise of "scheme liability."[2]

*Second*, Plaintiff asserts that it is "by definition" a fraudulent scheme to represent to investors that offering funds will be used for one purpose and to use such funds for another purpose. Opp'n at 18-19. The case law to which Plaintiff cites fails to support this "definition"

---

[2] The SEC argues that conduct necessarily constitutes a "scheme" to the extent it occurs *after* a misrepresentation or omission. Opp'n at 20. And while the SEC provides no legal support that actually establishes this argument (rather than tenuous extrapolation from cases in which alleged misstatements happened to occur after alleged "schemes" and courts found no "scheme liability"), the SEC's position is incorrect for another reason: the fact that a misstatement or omission occurs prior to conduct in no way alters whether the "core misconduct alleged is in fact [the] misstatement" or omission. *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 378 (S.D.N.Y. 2006).

3

of fraudulent scheme. Plaintiff cites two decisions affirming orders granting default judgment or default judgment penalties based on factors *unrelated* to the merits of the case. *See SEC v. McNulty*, No. 94 Civ. 7114, 1996 WL 422259, at *2 (S.D.N.Y. July 29, 1996); *SEC v. One Wall St., Inc.*, No. 06 Civ. 4217, 2008 WL 5082294, at *1 (E.D.N.Y. Nov. 26, 2008).[3] Moreover, it is unclear whether liability in *either* case was even premised on "scheme liability," rather than misrepresentations or omissions. *McNulty*, 1996 WL 422259, at *2 ("The SEC alleged that [defendant] violated the anti-fraud and disclosure provisions in [] § 10(b) . . . ."); Pl. SEC's Mem. of Law in Supp. of Mot. for Default J. Against One Wall Street, Inc., et al., 2007 WL 4787737 (E.D.N.Y. June 5, 2007) ("To prove a violation . . . the Commission must show that the Non-Settling Defendants made a material misrepresentation or omission . . . ."). Plaintiff's allegations are therefore legally unsupported, and the Court should dismiss them.

### 2. Plaintiff Fails To Allege That Mr. Jiang Participated In Fraudulent Conduct

Even if Plaintiff has alleged fraudulent conduct sufficient to impose "scheme liability," Plaintiff has not adequately pleaded that Mr. Jiang—as opposed to others—personally participated in such conduct.

*First*, the Opposition contends that Mr. Jiang incurred "scheme liability" because he allegedly met with investment bankers, presented at conferences, appeared at road shows, and assisted in drafting and reviewing press releases and SEC filings.[4] But such conduct—to the extent it is relevant at all—is relevant only insofar as it relates to a misrepresentation or omission

---

[3] Mr. Jiang does not contest that the transfer of offering funds, when coupled with *additional* detailed allegations, can in some cases constitute a "scheme" sufficient to impose liability. *See United States v. Aloi*, 511 F.2d 585 (2d Cir. 1975). Nevertheless, in the present case, the SEC has failed to *allege facts* sufficient to support scheme liability. In *Aloi*, the evidence proved the existence of an elaborate conspiracy, replete with "kickbacks" and the employment of "a well-known stock swindler," *id*. at 590; here, in contrast, Plaintiff only alleges that corporate funds were raised, and that public filings failed to disclose the transfer of such funds to related-parties.

[4] The SEC also states in its Opposition that Mr. Jiang "put his name on press releases," Opp'n at 22, but no such allegation is found in the Complaint. In any event, such conduct is unrelated to the "core misconduct" belatedly identified in the Opposition, *i.e.*, the transfer of offering funds from one account to another, *see id.* at 20.

4

claim, a claim that has *not* been asserted against Mr. Jiang.  *See* Opp'n at 20 (noting that the "'core misconduct' is . . . the *transfer* of . . . proceeds" and not the offering) (emphasis added).

*Second*, the Complaint makes clear that Mr. Jiang's "role" in the alleged "scheme"—if there was any at all—was purely ministerial.  Plaintiff describes Ms. Ju as one of CNEP's founders and control persons, a Chairman and significant shareholder for various CNEP subsidiary companies, and an individual who was involved in CNEP's day-to-day operations and management.  *See* Compl. ¶¶ 3, 16, 43, 45, 81-82.  And Plaintiff further alleges that Ms. Ju *directed* Mr. Jiang to execute numerous of the alleged transactions at issue.  Compl. ¶¶ 25, 28; *see also* Opp'n at 24.  To the extent Plaintiff has demonstrated that a "scheme" even existed, the Complaint establishes—at most—that Mr. Jiang performed "purely administrative duties" at Ms. Ju's direction "without knowledge of the purpose of the scheme" and "so has not incurred liability."  *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 486 (S.D.N.Y. 2007) (noting that in such circumstances, "[t]he question of scienter is never reached because as an initial matter, the person did not engage in the unlawful conduct.").

### 3. Plaintiff Fails to Plead That Mr. Jiang Had The Requisite State of Mind

The Court should dismiss Claims One and Two for the independent reason that Plaintiff fails to plead the relevant state of mind against Mr. Jiang with the requisite particularity.

Plaintiff's Opposition alleges that Plaintiff has pleaded a "strong inference" of scienter because the "allegation of diverting offering proceeds, standing alone, is sufficient to establish scienter."  Opp'n at 23.  In support of its argument, Plaintiff cites a litany of cases (including out-of-circuit decisions) that do not, in fact, support Plaintiff's expansive assertion.  Rather, the decisions to which Plaintiff cites stand for the far more limited principle that a defendant's use of offering funds for *personal* reasons *may* constitute one factor, among others, in a scienter

5

determination.  *See, e.g.*, *SEC v. George*, 426 F.3d 786, 795-96 (6th Cir. 2005) (noting that plaintiff established scienter because, among other reasons, defendant in Ponzi scheme "spent investor funds on personal expenses"); *Lowry v. SEC*, 340 F.3d 501, 506 (8th Cir. 2003) (affirming recklessness finding because defendant, a "seasoned investment advisor[,] . . . planned to use the funds for personal reasons . . . ."); *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 192 (3d Cir. 2000) (affirming scienter finding because, among other reasons, "funds [were] spent on such things as the [defendants'] home, a new Mercedes Benz, etc."); *In re Advanced Battery Techs., Inc. Secs. Litig.*, No. 11 Civ. 2279, 2012 WL 3758085, at *11 (S.D.N.Y. Aug. 29, 2012) (finding that plaintiffs pleaded scienter by alleging that *entire* offering company was a fraud); *SEC v. Opulentica*, 479 F. Supp. 2d 319, 327 (S.D.N.Y. 2007) (noting that defendant was estopped from denying liability and in fact "used some of the money for his own personal benefit.").

Critically, Plaintiff has *not* alleged that Mingfu—let alone Mr. Jiang—used or intended to use offering funds for personal benefit.[5]  Rather, Plaintiff's Complaint alleges only that Plaintiff is unaware of any documented business purpose for the alleged transfers.  Compl. ¶ 26.  As Mr. Jiang pointed out in the MTD—and as Plaintiff failed to address in its Opposition—the lack of a documented business purpose does not necessarily render such transfers improper.  Merely alleging that a transfer had no documented business purpose is woefully insufficient to plead a "strong inference" of scienter.

---

[5] In its Opposition, Plaintiff states that Defendants (presumably including Mr. Jiang) "contend that paying their relatives with investor money cannot violate Section 17(a)(2) because they did not personally obtain money or property."  Opp'n at 24.  To the extent this statement is intended to reflect or portray Mr. Jiang's position, such portrayal is flawed.  In the MTD, Mr. Jiang states that Plaintiff does not "allege that Mr. Jiang realized any 'psychic' or 'emotional' benefit from his father's alleged receipt of funds that could arguably satisfy the motive requirement."  MTD at 13.  Thus, while it might be possible that a defendant could benefit from an economic advantage obtained by a family member, Plaintiff here has failed to allege that Mr. Jiang received such benefit.

Likewise, Plaintiff fails properly to plead scienter (or negligence for its Section 17(a)(3) claim)[6] for the alleged transfers to Ms. Ju and Ms. Sun Jishuang.  Specifically, the Complaint fails to allege that Mr. Jiang had any expertise or familiarity with reporting, auditing, or accounting requirements for related-party transactions.  In contrast, and as described above, *see supra* § II.A.1, the Complaint alleges that Ms. Ju—CNEP's alleged founder, control person, and day-to-day manager and operator—*directed* Mr. Jiang to execute the alleged transactions at issue.  *See* Compl. ¶¶ 25, 28.  Nowhere does Plaintiff allege that Mr. Jiang ever knew that the funds were intended for anything other than general business purposes.  Nor does the Complaint allege that Mr. Jiang *should have* had any reason to believe otherwise, especially given that Mr. Jiang's superior allegedly *directed* him to make the transfers at issue.  *Cf.* John Lees Associates Report, Ex. B to Decl. of T. Davis, Dkt. 27, p. 14 (finding after extensive investigation that there was "no evidence to suggest that funds transferred" to Ms. Ju were withdrawn for personal use).[7]

### B. The Court Should Dismiss Claims Five and Six For Failure To Allege Properly Aiding And Abetting Liability

The Complaint fails to allege adequately that Mr. Jiang aided and abetted a primary violation of the securities law, necessitating dismissal of Counts Five and Six.  As discussed above, *see supra* § II.A, Plaintiff failed to allege a primary violation.  Even had it done so, the SEC failed to allege that Mr. Jiang had "actual knowledge" of the primary violation or that he

---

[6] Plaintiff asserts that Mr. Jiang has not challenged the insufficiency of Plaintiff's negligence allegations.  Opp'n at 27.  To the contrary, the MTD explains that Plaintiff's single, conclusory statement about Mr. Jiang's mental state is insufficient as a matter of law.  *See* MTD at 13.  The MTD also describes that the Complaint does not allege that Mr. Jiang had any background in or responsibilities related to accounting, reporting requirements, or books and records, *i.e.*, that his alleged conduct was anything but reasonable.  *See* MTD at 18.

[7] Plaintiff contends that Mr. Jiang possessed "knowledge" about the wrongfulness of the alleged transfers to Mingfu because he "tried to cover it up in testimony before the SEC."  Opp'n at 30.  Assuming for the sake of the MTD that Mr. Jiang did in fact try to "cover up" the alleged transfers to Mingfu, Mr. Jiang's knowledge in *August 2011* (the date of Mr. Jiang's SEC testimony) in no way reveals Mr. Jiang's mental state in *late 2009*, when the transactions at issue allegedly occurred.  SEC Deposition Transcript dated Aug. 5, 2011, Ex. A to Decl. of T. Davis, Dkt. 27, p. 1.

7

"substantially assisted" the primary violation.  *See SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012).  Indeed, *no case* has held that the reasonable execution of a superior's orders—or having been listed as a contact person on a press release—constitutes "substantial assistance."  *See id.* at 211 (requiring showing that defendant "'associate[d] himself with the venture, that [defendant] participate[d] in it as in something that he wishe[d] to bring about, [and] that he [sought] by his action to make it succeed.'") (internal citations omitted).

### 1. Actual Knowledge Is The Standard For Aiding And Abetting Liability

Plaintiff erroneously contends that Mr. Jiang violated a fiduciary duty and that, therefore, he need only have acted "recklessly" for liability to attach.  Opp'n at 29.  Because there is no basis for this argument in the statutory text or the legislative history of Section 20(e), courts in this District have repeatedly rejected the SEC's attempts to impose a "recklessness" standard.  *See, e.g.*, *SEC v. Stanard*, No. 06 Civ. 7736, 2009 WL 196023, *31-32 (S.D.N.Y. Jan. 27, 2009) (Lynch, J.) ("Courts have been clear in requiring a showing of 'actual knowledge of the violation by the aider and abettor'. . . . This Court has rejected the SEC's arguments for a recklessness standard under section 20(e), which contradicts not only the plain language of the statute but also its legislative history."); *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 382 (S.D.N.Y. 2006) ("The SEC argues that Section 20(e) encompasses recklessness in addition to actual knowledge.  This contention must be rejected."); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334-35 (S.D.N.Y. 2006) (rejecting argument that "recklessness is sufficient for the required mental state" and holding that "knowing misconduct must now be shown").[8]  Accordingly,

---

[8] Although "some courts in this district have relied on pre-[PSLRA] precedents in finding that where defendants owe a fiduciary duty to those defrauded, the SEC may state a claim for aiding and abetting upon a pleading of recklessness or actual knowledge[,]" *SEC v. Espuelas (Espuelas I)*, 579 F. Supp. 2d 461, 470 (S.D.N.Y. 2008), the consensus among recent decisions is to allow liability only upon a showing of actual knowledge, *see id*. (rejecting recklessness standard based upon Judge Cote's "thorough analysis of the PSLRA's text, structure and legislative history") (citing *KPMG*, 412 F. Supp. 2d at 382–83).

8

Plaintiff must allege "actual knowledge" of a primary violation by Mr. Jiang.[9]  Because it fails to do so, Claims Five and Six cannot stand.

### 2. The Complaint Fails To Allege Adequately That Mr. Jiang Had Actual Knowledge Of A Primary Violation

Plaintiff has not alleged sufficient facts demonstrating that Mr. Jiang had "actual knowledge" of a primary violation of Exchange Act Sections 10(b) or 13, or the applicable rules promulgated thereunder.  The Complaint is devoid of any allegations concerning Mr. Jiang's interactions with CNEP's finance department regarding the transactions at issue.  *Compare SEC v. Espuelas (Espuelas I)*, 579 F. Supp. 2d 461, 484 (S.D.N.Y. 2008) (dismissing aiding and abetting claims where "[t]he Complaint contains no allegations that someone with accounting knowledge communicated to [defendants] that the transactions were being accounted for incorrectly") *with SEC v. Espuelas (Espuelas II)*, 698 F. Supp. 2d 415, 421, 432 (S.D.N.Y. 2010) (allowing aiding and abetting claims against same defendants where the "amended complaint add[ed] allegations that [defendants] knew that StarMedia reported too much revenue [and ]. . . each received revenue reports generated from [offering company's] books and records . . . .").

Instead of alleging facts as required, Plaintiff instead resorts to insinuations outside the four corners of its own Complaint.  *First*, recognizing its failure to allege any communications with CNEP's accounting department, Plaintiff contends that Mr. Jiang "effected large transfers . . . apparently without raising any red flags."  Opp'n at 30.  Importantly, however, the Complaint makes no allegation whatsoever regarding whether Mr. Jiang communicated with CNEP's accounting department, or whether Mr. Jiang even had a duty to report any information to the accounting department.  Plaintiff cannot now point to its own failure to plead specific facts as evidence of Mr. Jiang's knowledge of wrongdoing.  *Second*, Plaintiff contends that Mr. Jiang

---

[9] For the reasons discussed above, *see supra* § II.A.3, relating to Mr. Jiang's scienter, the SEC has also failed adequately to allege that Mr. Jiang acted recklessly.

9

lied in his testimony to the SEC in order to "cover up" his "knowing participation in the charged scheme." Opp'n at 30.  Yet, as described above, *see supra* § II.A.1 note 7, Mr. Jiang's alleged knowledge of a scheme in August 2011 (the date of Mr. Jiang's SEC testimony) is irrelevant to Mr. Jiang's mental state in late 2009, when the transactions at issue allegedly occurred.

### 3. The Complaint Fails To Allege Adequately That Mr. Jiang Substantially Assisted A Primary Violation

The Complaint fails to allege facts supporting Plaintiff's claim that Mr. Jiang "substantially assisted" a violation of the securities laws.  *See Apuzzo*, 689 F.3d at 206.  Plaintiff does not allege facts demonstrating how Mr. Jiang "assisted" in drafting filings or press releases, or what statements he made during road shows.  Compl. ¶ 21.  Moreover, Plaintiff's conclusory legal statements in its Opposition only serve to reinforce the bare-bones nature of its pleading: Mr. Jiang "effected the transfers," and "participat[ed] in disseminating falsehoods."  Opp'n at 30. Presumably, this contention refers to Mr. Jiang's alleged attendance at road shows and work with press releases—yet, again, Plaintiff nowhere alleges how Mr. Jiang assisted this work or how his work "disseminat[ed] falsehoods."  Moreover, and to the extent Plaintiff's "scheme liability" is premised on the transfer of post-offering funds, mere allegations of wiring funds are insufficient to plead substantial assistance.  *See, e.g.*, *Espuelas I*, 579 F. Supp. 2d at 485 (describing substantial assistance inquiry as a "close[] question" where defendant "sent wire transfers" *and* made misrepresentations to auditors).  Finally, Plaintiff makes no factual allegations whatsoever regarding Mr. Jiang's role with respect to CNEP's books and records or internal controls.

### III.   CONCLUSION

For the foregoing reasons, Mr. Jiang respectfully requests that the Court dismiss the First, Second, Fifth, and Sixth Claims against Mr. Jiang with prejudice, and grant such other relief as this Court deems just and proper.

Dated: San Francisco, CA
May 31, 2013

        GIBSON, DUNN & CRUTCHER LLP

        By:     /s/ Thad A. Davis

Thad A. Davis (SBN 3009628)
Michael Li-Ming Wong (Admitted *Pro Hac Vice*)
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Barry Goldsmith (SBN 4857694)
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2440
Facsimile: 212.351.5340

Attorneys for CHAO JIANG