**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

Plaintiff,

v.

CHINA NORTHEAST PETROLEUM HOLDINGS
LIMITED; WANG HONGJUN, (a/k/a Hongjun
Wang); JU GUIZHI (a/k/a Guizhi Ju); and JIANG
CHAO (a/k/a/ Chao Jiang)

Defendants,

JIANG MINGFU (a/k/a Mingfu Jiang); and SUN
JISHUANG (a/k/a Jishuang Sun),

Relief Defendants.

Case No. 12-CV-8696 (NRB)
ECF Case

FIRST AMENDED COMPLAINT

---

Plaintiff, the United States Securities and Exchange Commission (the "Commission" or

"SEC"), alleges:

<u>SUMMARY</u>

1.      This action arises from the undisclosed diversion of offering proceeds to the

personal accounts of corporate insiders and related fraudulent and deceptive conduct.

2.      China Northeast Petroleum Holdings Limited ("CNEP") is purportedly engaged

in oil exploration, drilling, and production in the People's Republic of China ("China").

3.      Beginning in at least January 2009 and continuing thereafter, Wang Hongjun

("Wang"), who then served as the Chairman of CNEP's Board of Directors and CNEP's

President and CEO, and Ju Guizhi ("Ju"), one of CNEP's founders, engaged in numerous

undisclosed, related-party transactions involving CNEP.  During 2009, there were at least 176

undisclosed, related-party transactions recorded in CNEP's accounting records.  The related-

1

party activity was comprised of approximately $28 million of transactions directly or indirectly from CNEP to Wang or Ju; approximately $11 million purportedly loaned to CNEP or paid to third parties on behalf of CNEP by Wang or Ju; and $20 million of post-year-end adjustments and year-end consolidations that purportedly reduced the debt owed by Wang and Ju to CNEP. Together, these transactions totaled approximately $59 million of related-party activity during 2009. Neither the magnitude nor the volume of these related-party transactions has been fully disclosed to the investing public.

       4.     In late 2009, CNEP made two public stock offerings. In connection with these offerings, CNEP publicly stated to investors in a registration statement signed by Wang that the offering proceeds would be used "to fund its future business expansion plan, and for general working capital purposes." CNEP and Wang subsequently repeated this representation in additional public statements in connection with the two offerings. CNEP and Wang did not disclose to investors the past pattern of related-party transactions or their intention to divert offering proceeds for improper purposes. CNEP's Registrations Statement filed on Form S-3 incorporated by reference CNEP's Annual Report for the year ended December 31, 2008 on Form 10-K and CNEP's Quarterly Report for the quarter ended March 31, 2009 on Form 10-Q. Each form falsely reported a consolidated cash balance of $13,239,213, which was intentionally overstated by $1 million.

       5.     In those two offerings, CNEP raised approximately $31.9 million in the U.S. capital markets in September and December 2009. The offering proceeds were initially deposited into CNEP's U.S. bank account (the "U.S. Bank Account"). Consistent with a pre-existing pattern of engaging in undisclosed, related-party transactions, funds were then diverted to corporate insiders and their family members in a manner that was neither disclosed to

investors nor consistent with CNEP's representations to investors concerning the intended and permissible uses of the offering proceeds.

6.      After offering proceeds were deposited into the U.S. Bank Account, Defendants made, or caused to be made, a number of transfers to company insiders or their family members, including without limitation:

- Wang's wife, Jishuang Sun ("Sun"), received $300,000 from CNEP's U.S. Bank Account and used the funds to purchase a home in California;

- The company's Vice President of Corporate Finance and Secretary, Jiang Chao, made two transfers totaling $910,000 from CNEP's U.S. Bank Account into his father's personal bank account; and

- Ju received $5.85 million in a series of transfers that originated from CNEP's U.S. Bank Account.

7.      Prior to the deposit of the offering proceeds, there were insufficient funds in CNEP's U.S. Bank Account to cover any of these transfers.  CNEP's Board of Directors was not apprised of and did not approve these transfers of funds; none of the transfers had any documented business purpose; none were consistent with the CNEP's representations to the investing public concerning the stated uses of the offering proceeds; and none of the transfers were disclosed to CNEP investors.  CNEP and others also knowingly provided false information and documents to auditors, including bank statements that were falsified to show an additional $1 million of nonexistent funds in a corporate bank account.

8.      The Commission brings this action seeking permanent injunctive relief to prevent future violations of the federal securities laws, disgorgement of ill-gotten gains with prejudgment interest, civil penalties, officer and director bars, and any other appropriate relief.

## JURISDICTION

9.      This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

10.     Venue is proper in this judicial district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the acts and omissions constituting violations alleged herein occurred in this judicial district.

11.     Defendants, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, practices, and courses of business described in this Complaint.

## DEFENDANTS

### CNEP

12.     CNEP is a Nevada corporation with its principal offices located in New York and a second office in California.  CNEP is purportedly engaged in oil exploration, drilling, and production in China.

13.     CNEP was formed through a reverse merger with a U.S. shell in April 2004.  Its common stock was thereafter registered with the SEC pursuant to Section 12(g) of the Exchange Act.  On June 15, 2009, CNEP began trading on NYSE Amex LLC, which became NYSE MKT, LLC ("NYSE") and its common stock was registered with the SEC pursuant to Section 12(b) of the Exchange Act.  As of December 31, 2009, CNEP had a market capitalization of approximately $258 million, with its stock trading on NYSE Amex, LLC at $9.25 per share.

14.     On July 6, 2012, NYSE filed a Form 25 delisting the common stock effective on July 16, 2012, and deregistering the common stock from Section 12(b) effective on October 4,

2012.  Upon deregistration from Section 12(b), the common stock reverted to its previous registration pursuant to Section 12(g) of the Exchange Act.  As of November 27, 2012, CNEP's stock remained de-listed, its market capitalization had fallen below $8 million, and its stock traded at $0.22 per share over-the-counter.

15.     On April 5, 2013, the Commission entered an order pursuant to Section 12(j) of the Exchange Act revoking the registration of each class of CNEP's securities registered pursuant to Section 12 of the Exchange Act.

### Wang

16.     Wang Hongjun, a/k/a Hongjun Wang, was the chairman of CNEP's Board of Directors, CEO and President from at least January 1, 2009 until May 23, 2010, at which time CNEP's Board of Directors accepted his resignation as Chairman and placed Wang on administrative leave from his position as CEO and President.  Wang continues to serve as a director of CNEP.  He is a Chinese national who resides in China.  At all relevant times, Wang was the largest shareholder of CNEP common stock, owning over 26% of the outstanding shares as reported by CNEP in its Annual Report on Form 10-K for the year ended December 31, 2009, and exerted actual control over CNEP.

17.     On May 28, 2013, the United States Department of Justice ("DOJ") publicly announced criminal charges against Defendant Wang arising out of certain conduct alleged herein.  *See United States v. Hongjun, et al.*, D.D.C. Case No. 13-CR-152 (the "Parallel Criminal Action").  Wang has not appeared in the Parallel Criminal Action and remains a fugitive.

### Ju

18.     Ju Guizhi, a/k/a Guizhi Ju, is one of CNEP's founders and Wang's mother.  She is a Chinese national who resides in China.  Ju served as a CNEP director from approximately

November 2009 through May 2010, but otherwise held no disclosed positions with the company. Throughout CNEP's existence, however, Ju has been heavily involved in CNEP's day-to-day operations and has exerted actual control over CNEP.  Ju also served for a period as Chairman of the CNEP subsidiary Songyuan North East Petroleum Technical Services Co., Ltd. ("Songyuan Technical"), and holds a ten percent equity interest in that company.  Ju likewise served for a period as both General Manager and as a Director of the CNEP subsidiary Songyuan Yu Qiao Oil & Gas Development Co., Ltd. ("Songuyan Yu Qiao").   As of February 15, 2012, Ju continued in her role at Songyuan Yu Qiao and was also a General Manager of CNEP subsidiary Changling Longde Oil and Gas.

### Jiang Chao

19.     Jiang Chao, a/k/a Chao Jiang, is a Chinese citizen who resides in Jersey City, New Jersey.  He serves as Vice President of Corporate Finance and Secretary of CNEP working out of CNEP's offices in New York.

20.     On May 28, 2013, the DOJ publicly announced seven criminal charges against Defendant Jiang Chao arising out of certain of the conduct alleged herein.  Five of the criminal charges against Jiang Chao were tried before a jury in the United States District Court for the District of Columbia in March and April 2014.  Jiang Chao was acquitted of two of the seven criminal charges before the case was put to the jury.  After extensive jury deliberations, the court declared a mistrial as to the remaining five charges.  By superseding information, Jiang Chao was subsequently charged with a single count of willful and knowing failure to implement internal controls in violation of Exchange Act Sections 13(b)(5) and 13(b)(2)(B), as to which Jiang Chao entered a guilty plea.  Sentencing is set for December 11, 2014.

*Relief Defendants*

21.     Sun Jishuang, a/k/a Jishuang Sun, is Wang's wife and, since November 2010, has served as the Treasurer/Cashier of CNEP.  She is a Chinese national who currently resides in California.  Sun is named as a relief defendant because she improperly received funds from CNEP to which she does not have a legal claim.

22.     Jiang Mingfu, a/k/a Mingfu Jiang, is Jiang Chao's father.  Jiang Mingfu is a Chinese citizen who resides in Jersey City, New Jersey.  Jiang Mingfu is named as a relief defendant because he improperly received funds from CNEP to which he does not have a legal claim.

## FACTUAL ALLEGATIONS

### A.     CNEP Raises $31.9 Million in the U.S. Capital Markets

23.     CNEP's stock was listed and began trading on NYSE on or about June 15, 2009.  Approximately two weeks later, the company filed a shelf registration statement on a Form S-3 signed by Wang that registered public offerings of up to $40 million of securities (the "Registration Statement"), and which became effective on September 9, 2009.  The Registration Statement stated that CNEP would "use the net proceeds from the sale of the securities covered by this prospectus for general corporate purposes, which may include working capital, capital expenditures, acquisitions of new technologies or businesses, and investments." CNEP's Registrations Statement filed on Form S-3 incorporated by reference CNEP's Annual Report for the year ended December 31, 2008 on Form 10-K and CNEP's Quarterly Report for the quarter ended March 31, 2009 on Form 10-Q.  Each form falsely reported a consolidated cash balance of $13,239,213, which was intentionally overstated by $1 million.

24.     Jiang Chao, at various times during 2009, met with investment bankers to raise capital, appeared at "road shows," and made presentations on behalf of CNEP at investor conferences.  For example, on September 1, 2009, CNEP issued a press release announcing that Jiang Chao, as part of the company's management team, would participate and present at an investor conference in New York on September 9, 2009, the same day that CNEP's Registration Statement became effective.  Jiang Chao also assisted in drafting and reviewing CNEP's press releases and filings with the SEC, including CNEP's periodic, quarterly, and annual reports and Registration Statement.

25.     On September 16, 2009, CNEP filed a Current Report on Form 8-K (the "September 8-K") signed by Wang, in which CNEP announced a public offering of CNEP stock.  The September 8-K included a copy of a press release that CNEP issued to the public the same day and listed Jiang Chao as the contact person.  In the press release, CNEP stated that it would "use the net proceeds from the offering to fund its future business expansion plan, and for general working capital purposes."  The September 8-K also included a copy of a Securities Purchase Agreement in which CNEP represented that it "shall use the net proceeds from the sale of the Securities hereunder for working capital purposes and shall not use such proceeds for: (a) the satisfaction of any portion of the Company's debt (other than payment of trade payables in the ordinary course of the Company's business and prior practices) . . . ."

26.     On December 15, 2009, CNEP filed another Current Report on Form 8-K signed by Wang (the "December 8-K") announcing a second offering of CNEP stock.  The December 8-K included a copy of a press release that CNEP issued the same day, in which CNEP represented that it planned to "use the net proceeds from the offering to redeem its 8% Senior Debenture issued to Lotusbox Investments Ltd. on February 28, 2008 and for general working

capital purposes." The press release again listed Jiang Chao as the contact person for CNEP. The December 8-K also included a copy of a Securities Purchase Agreement in which CNEP represented that it "shall use the net proceeds from the sale of the Securities hereunder for working capital purposes and repayment of debt and shall not use such proceeds for: (a) the redemption of any Common Stock or Common Stock Equivalents, (b) the settlement of any outstanding litigation or (c) and [sic] shall not use such proceeds in violation of the FCPA or OFAC regulations."

27.     CNEP raised $18.4 million in September 2009 and $13.5 million in December 2009 through two best-efforts offerings underwritten by a New York-based investment bank.

**B.     Offering Proceeds Transferred to Insiders**

28.     The offering proceeds were deposited into CNEP's U.S. Bank Account. The U.S. Bank Account statements were delivered via mail to CNEP's New York office, which was staffed by Jiang Chao. Jiang Chao reviewed the U.S. Bank Account statements and then forwarded copies to CNEP's China offices. Wang had signature authority over the account from the time it was opened in 2005 through at least February 7, 2011, at which time he re-signed the signature card and added his wife, Sun, as an additional signatory. In addition, Jiang Chao had signatory authority over the account from its inception until October 10, 2010. During that period, Ju regularly directed Jiang Chao to make transfers to and from the account despite having no official authority over the bank account.

29.     On November 3 and December 16, 2009, Jiang Chao authorized the transfer of $500,000 and $410,000, respectively, of proceeds from CNEP's U.S. Bank Account to a personal bank account held in the name of his father, Jiang Mingfu, and over which Jiang Chao exercised control. Jiang Mingfu did not hold any disclosed position at CNEP. There is no

known or documented business purpose for the transfers, and the Board of Directors was not apprised of, and did not authorize, the transfers.

30.     Despite having authorized the transfers described in Paragraph 26 above, Jiang Chao falsely claimed in sworn testimony to the SEC that none of his family members had received anything of value over $500 at any time from CNEP.

31.     Ju directed Jiang Chao to transfer $300,000 of proceeds from CNEP's U.S. Bank Account to a personal bank account held in the name of her daughter-in-law, Sun.  Thereafter, on November 19, 2009, Jiang Chao effected the transfer from the U.S. Bank Account to Sun.  Sun then used those funds to purchase a home in California in her name.  There is no known or documented business purpose for the transfer, and the Board of Directors was not apprised of, and did not authorize, the transfer.

32.     Between September 25 and 29, 2009, Ju also received multiple transfers of proceeds totaling approximately $5.85 million.  Jiang Chao authorized and caused the transfers to be made from the U.S. Bank Account into which the offering proceeds were deposited.  The transfers were subsequently routed through multiple CNEP bank accounts in China before being deposited into Ju's personal bank account in China.  There is no known or documented business purpose for these transfers, and CNEP's board was not apprised of, and did not authorize, them.

33.     Prior to the deposit of offering proceeds into CNEP's U.S. Bank Account, there were insufficient funds in the account to fund the transfers to Sun, Jiang Mingfu and Ju.  Indeed, immediately prior to the first deposit of offering proceeds on or about September 16, 2009, CNEP's U.S. Bank Account had a balance of only approximately $84,000.

34.     None of the transfers detailed in Paragraphs 26 through 29 above were disclosed to the investing public.

**C.    CNEP Insiders Had Long Engaged In Undisclosed and Improper Related-Party Transactions**

35.    By September 2009, CNEP, Wang and Ju already had engaged in a course of conduct that involved numerous related-party transactions, including the routine and repeated transfer of cash between (both to and from) CNEP and Wang or Ju.  As set forth above, these same practices continued after the 2009 offerings.

*1.    The Board Discovers Undisclosed, Related-Party Transactions*

36.    In April 2010, an independent director who served as Chairman of the audit committee of CNEP's Board of Directors (the "Audit Committee") discovered a line item in the company's draft 2009 financial statements reflecting that $3.89 million was allegedly due to CNEP from a shareholder.  Prior to April 2010, neither the Board of Directors nor the Audit Committee had been apprised of any such debt or the underlying transactions with a shareholder giving rise to such debt.

37.    The Audit Committee Chairman sought an explanation from the company's management.  He learned that the $3.89 million was allegedly due from Ju, but he received varying explanations for the debt.  For example, the CFO at the time claimed that the $3.89 million represented an amount owed by Ju to the company, and that the debt was a one-time occurrence.

38.    Thereafter, at the behest of the Audit Committee, CNEP and its Board of Directors retained a Hong Kong accounting firm, to review the $3.89 million debt and any other related-party transactions that had occurred in 2009.

        **2.**      *The Hong Kong Accounting Firm Uncovers Numerous Undisclosed, Related-Party Transactions*

39.      In July 2010, the Hong Kong accounting firm issued a report to CNEP's Board of Directors identifying at least 176 undisclosed, related-party transactions between CNEP and Wang or Ju in 2009 (the "July 2010 Report").

40.      During the investigation of Ju's alleged $3.89 million debt, CNEP's then-CFO admitted that transfers between the company and Ju or Wang occurred more regularly than he had previously represented to the Audit Committee.

41.      As a result of the investigation, the Board of Directors learned that the $3.89 million debt had not been a "one-off transfer" but rather the result of a subset of the 176 undisclosed, related-party transactions.  The Board of Directors further learned that it was not possible to identify the transactions allegedly underlying the $3.89 million because of "the significant number and diverse nature of transactions" with Ju.  Ju claimed that transactions occurred through her personal accounts to avoid certain corporate taxes and, thereby, obtain lower prices from vendors.  The Hong Kong accounting firm, however, found that "[n]o supporting documentation is available to verify these representations . . . ."

42.      The 176 related-party transactions detailed in the July 2010 Report totaled approximately $59 million, which included the $3.89 million debt owed by Ju to CNEP.  The $59 million total included approximately $28 million of transactions directly or indirectly from CNEP to Wang or Ju, plus approximately $11 million that Wang or Ju allegedly loaned to CNEP or paid to third parties on behalf of the company.  A balance of approximately $20 million remained due from Wang or Ju to CNEP as of December 31, 2009, but that debt was purportedly eliminated through a series of unusual and largely uncorroborated post-year-end adjustments and consolidating journal entries, including a purported $4.6 million capital infusion by Wang.

43.     The $28 million worth of transaction involving Ju and Wang that occurred during 2009 included cash loans from CNEP to Ju and Wang of at least $17.2 million and $3.8 million, respectively.  These "loans" were not documented and did not have any written repayment terms.

44.     In terms of the magnitude of these related-party transactions with Ju and Wang, $28 million is approximately 94% of the $29.9 million of net proceeds that CNEP received from the 2009 public offerings; almost twice the approximately $15.9 million in cash provided by operations in 2009; and 43% of CNEP's reported annual revenue of approximately $64.7 million for 2009.

45.     The Audit Committee Charter required all related-party transactions to be reviewed and approved by the Audit Committee.  Yet, neither the Board of Directors nor the Audit Committee was apprised of, much less approved, the 176 related-party transactions detailed in the Hong Kong accounting firm's July 2010 Report.  Moreover, neither the volume nor the magnitude of these related-party transactions was fully disclosed to the investing public.

**D.      Wang and Ju's Ongoing Role In Controlling CNEP**

46.     Ju was one of the founders of CNEP.  Since the company's inception, she was actively involved in the day-to-day decisions, operations, and management of CNEP, even during periods when it was not disclosed that she was acting as an officer or director of the company.

47.     Except when she was briefly appointed to serve as a director from November 20, 2009 through May 23, 2010, Ju did not have any disclosed role at CNEP.  Nonetheless, she engaged in numerous transactions with and on behalf of the company, including those described above.

48.     Before, during and after her brief tenure as a CNEP director, Ju exerted actual control over CNEP.  For example, Ju made decisions and entered into agreements on behalf of company, including directing transfers of assets from CNEP to herself and others, and allegedly entering into transactions with vendors on behalf of CNEP.  Ju also attended and participated in meetings of the Board of Directors before and after she served as a director.

49.     On May 23, 2010, after the Board of Directors received a preliminary report from the Hong Kong accounting firm, the Board of Directors issued a resolution that, among other things, (i) placed Wang on administrative leave as CEO and accepted Wang's resignation as Chairman of the Board (although he was allowed to continue serving as a director), and (ii) accepted Ju's resignation as a director.  The board resolution further stated that "going forward, Ms. Ju shall have no role in the operation of the Company or its subsidiaries and she shall have no authority to act on behalf of the Company or its subsidiaries."  On May 27, 2010, CNEP filed a Form 8-K disclosing that Ju had resigned as a director and that Wang had resigned as Chairman of the Board of Directors and was placed on administrative leave as President and CEO.

50.     Wang and Ju nevertheless continued to exert control over CNEP and certain of its subsidiaries after May 23, 2010.

51.     Ju continued to be actively involved in the day-to-day operations and management of CNEP subsequent to May 23, 2010, when she was officially barred by the Board of Directors from participating in the company's operations.  For example, Ju continued to attend board meetings and negotiate with outside counsel regarding payment for services rendered to CNEP.  Ju also continued to serve as the General Manager of two of CNEP's operating

subsidiaries in China, Song Yuan City Yu Qiao Oil and Gas Development Ltd. Corp and Longde Oil and Gas Development Co. Ltd.

52.     Wang was the largest shareholder of CNEP, continued to serve as the General Manager for the CNEP subsidiary, Song Yuan North East Petroleum Technical Service Co. Ltd., and continued to have signature authority over CNEP's Bank of America account even after May 23, 2010.

**E.     CNEP's Public Filings Contained Material Misrepresentations and Omissions**

53.     CNEP's Registration Statement, its September 8-K (and attached press release and Securities Purchase Agreement), and its December 8-K (and attached press release and Securities Purchase Agreement), each of which was signed by Wang, falsely represented that the offering proceeds would be used to fund its future business expansion plan and for general working capital purposes.

54.     CNEP filed, or was required to file, annual, current and quarterly reports (on Forms 10-K, 8-K and 10-Q) from at least 2009 to the present.  In these filings, including, but not limited to, CNEP's Form 10-K filed on September 3, 2010 for the period ended December 31, 2009 and CNEP's Forms 10-Q/A filed on September 1, 2010 for the periods ended March 31, 2009, June 30, 2009 and September 30, 2009, CNEP was required but failed to disclose, among other things, the following facts that are detailed herein:  (i) money was transferred from CNEP to Wang and Ju; (ii) offering proceeds were sent to Sun's personal bank account and used to pay a part of the purchase price of Sun's house; (iii) offering proceeds were sent to the personal bank accounts of Ju and Jiang Mingfu; (iv) at least 176 related-party transactions totaling $59 million occurred during 2009; (v) Ju was an undisclosed control person prior to being appointed a director in November 2009 and, in direct contravention of a board resolution, returned to being

an undisclosed control person after May 23, 2010; and (vi) CNEP lacked adequate internal controls. Throughout 2009 to the present, CNEP failed to file required Current Reports on Forms 8-K disclosing the foregoing.

55.     CNEP filed two Forms 10-Q signed by Wang on May 15, 2009 and August 14, 2009 for the periods ended March 31, 2009 and June 30, 2009, respectively, and a Form 10-Q/A on July 23, 2009 for the period ended March 31, 2009, that failed to disclose, among other things, the following facts that are detailed herein:   (i) money was transferred from CNEP to Wang and Ju, (ii) Ju was an undisclosed control person, and (iii) CNEP lacked adequate internal controls.

56.     CNEP filed a Form 10-Q signed by Wang on November 16, 2009 for the period ended September 30, 2009 that failed to disclose, among other things, the following facts that are detailed herein: (i) money was transferred from CNEP to Wang and Ju, (ii) Ju was an undisclosed control person, (iii) CNEP lacked adequate internal controls, and (iv) offering proceeds were transferred to Ju.

57.     CNEP falsely reported in its financial statements included in CNEP's Annual Report for the year ended December 31, 2008 a consolidated cash balance of $13,239,213, which was intentionally overstated by $1 million.  Additionally, CNEP overstated consolidated cash balances by $1 million in its Quarterly Reports for the quarters ended June 30, 2008, September 30, 2008, and March 31, 2009.

58.     CNEP and others also knowingly provided false information and documents to auditors, including bank statements that were altered to include an additional $1 million in a corporate bank account for the periods referenced above.

**F.     CNEP Lacked Adequate Recordkeeping and Internal Controls**

59.     CNEP lacked adequate recordkeeping and supporting documentation regarding at least the following matters that are detailed herein:  (i) the purpose of the transfers of money to Wang and Ju, (ii) alleged loans to and from Wang and Ju and any repayment terms, (iii) Ju's authority to negotiate or execute contracts on behalf CNEP during the time she was an undisclosed control person, (iv) post-year-end adjustments, and (v) payments to vendors and third parties.  As noted above, although Wang and Ju claimed that they used the money they received from CNEP to pay corporate expenses, the alleged payments on behalf of CNEP were not properly documented or recorded in CNEP's accounting records.

60.     On May 23, 2010, based on a preliminary report from the Hong Kong accounting firm, in a unanimous written consent in lieu of a special meeting, CNEP's Board of Directors "determined that there are significant deficiencies in the Company internal controls, especially regarding the Company's cash accounts."  CNEP lacked sufficient internal controls in procurement and cash management areas, including, among other things, procurement and payment procedures, obtaining bids from suppliers, inappropriate accounts offsetting, inadequate segregation of duties in accounts payable, inefficient monitoring controls, and cash disbursements.

**G.     Defendant Jiang Chao Knowingly Failed to Implement Adequate Internal Controls**

61.     As an officer of CNEP, Jiang Chao was both aware of CNEPs and his own responsibilities to devise and maintain a system of adequate internal controls for CNEP.

62.     Jiang Chao engaged in discussions and email communications with members of the Board of Directors of CNEP about the requirement to devise and maintain a system of

adequate internal accounting controls at CNEP and the steps that should be taken to meet that requirement.

63.     Jiang Chao engaged in communications with regulators, including the New York Stock Exchange, about the requirement to devise and maintain a system of adequate internal accounting controls at CNEP.

64.     Despite this knowledge of his responsibilities, Jiang Chao knowingly failed to implement such a system of internal accounting controls, which resulted in a number of transactions that were not properly accounted for in CNEP's books and records.

65.     As a result of CNEP and Jiang Chao's knowing failure to implement and maintain a system of adequate internal accounting controls at CNEP, officers and directors of CNEP were able to engage in various transactions in their personal bank accounts with CNEP money.

## FIRST CLAIM FOR RELIEF

### Violations of Securities Act Section 17(a)

66.     Paragraphs 1 through 65 are re-alleged and incorporated by reference.

67.     By reason of the conduct described above, including without limitation the conduct described in Paragraphs 23, 25-26, 28-34, 35-45 and 53-57, Defendants CNEP and Wang, in connection with the offer or sale of securities, by the use of any means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting with the requisite degree of knowledge or state of mind, obtained money or property by means of untrue statements of material facts or omissions of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. With respect to the misrepresentations described in Paragraphs 23, 25-26 and 53, CNEP and Wang knew, or were reckless or negligent in not knowing, that the offering proceeds would not

18

be used for the stated purposes in light of, the conduct described in detail above, including (i) the longstanding practice of undisclosed, related-party transactions between CNEP and Wang or Ju (as detailed in Paragraphs 35-45 above), and (ii) the undisclosed transfers of offering proceeds to corporate insiders and their immediate family members that came on the heels of the 2009 offerings (as detailed in Paragraphs 28-34 above).  CNEP and Wang likewise knew, or were reckless or negligent in not knowing, that the related omissions described in Paragraphs 53-57 rendered the filings and other public statements misleading in light of the circumstances under which they were made.

68.    By reason of the conduct described above, Defendants CNEP, Wang, Ju and Jiang Chao, in connection with the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting with the requisite degree of knowledge or state of mind (i) employed devices, schemes, or artifices to defraud; and (ii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities. Defendants CNEP, Wang, Ju and Jiang Chao knew, or were reckless or negligent in not knowing, that they employed devices, schemes and artifices to defraud and engaged in transactions, practices or courses of conduct that operated as a fraud on the investing public by, the conduct described in detail above, including among other things, (i) engaging in a longstanding pattern of related-party transactions, (ii) raising funds with the intent to divert those offering proceeds for improper purposes, (iii) diverting such proceeds to corporate insiders and their immediate family members, (iv) concealing their misconduct from CNEP's Board of Directors and the investing public; and (v) knowingly failing to implement internal controls

sufficient to prevent the conduct alleged herein and/or knowingly circumventing those internal controls that were in place.

69.     By reason of the conduct described above, Defendants CNEP, Wang, Ju and Jiang Chao violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5

70.     Paragraphs 1 through 69 are re-alleged and incorporated by reference.

71.     By reason of the conduct described above, including without limitation the conduct described in Paragraphs 23, 25-26, 28-34, 35-45 and 53-57, Defendants CNEP and Wang, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, knowingly or recklessly made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  With respect to the misrepresentations described in Paragraphs 23, 25-26, 53 and 57, CNEP and Wang knew, or were reckless in not knowing, that they were making false and misleading statements in light of the conduct described in detail above, including (i) the longstanding practice of undisclosed, related-party transactions between CNEP and Wang or Ju (as detailed in Paragraphs 35-45 above), and (ii) the undisclosed transfers of offering proceeds to corporate insiders and their immediate family members that came on the heels of the 2009 offerings (as detailed in Paragraphs 28-34 above).  CNEP and Wang likewise knew, or were reckless in not knowing, that the related omissions described in Paragraphs 53-57 rendered the filings and other public statements misleading in light of the circumstances under which they were made.

72.     By reason of the conduct described above, Defendants CNEP, Wang, Ju and Jiang Chao, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, knowingly or recklessly, (i) employed devices, schemes, or artifices to defraud and (ii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities. Defendants CNEP, Wang, Ju and Jiang Chao knew, or were reckless or negligent in not knowing, that they employed devices, schemes and artifices to defraud and engaged in transactions, practices or courses of conduct that operated as a fraud (as described in Paragraphs 20-55) on the investing public by the conduct described in detail above, including, among other things, (i) engaging in a longstanding pattern of related-party transactions, (ii) raising funds with the intent to divert those offering proceeds for improper purposes, (iii) diverting such proceeds to corporate insiders and their immediate family members, (iv) concealing their misconduct from CNEP's Board of Directors and the investing public; and (v) knowingly failing to implement internal controls sufficient to prevent the conduct alleged herein and/or knowingly circumventing those internal controls that were in place.

73.     By reason of the conduct described above, Defendants CNEP, Wang, Ju, and Jiang Chao violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

### Violations of the Exchange Act Section 13(b)(5)
### and Exchange Act Rule 13b2-1

74.     Paragraphs 1 through 73 are re-alleged and incorporated by reference.

75.     By reason of the conduct described above, Defendants Wang, Jiang Chao, and Ju knowingly circumvented and/or knowingly failed to implement a system of internal accounting controls, and/or knowingly falsified books, records, or accounts subject to Exchange Act Section 13(b)(2).

76.     By reason of the conduct described above, Defendants Wang, Jiang Chao, and Ju, directly or indirectly, falsified or caused to be falsified books, records or accounts subject to Exchange Act Section 13(b)(2).

77.     By reason of the conduct described above, Defendants Wang, Jiang Chao and Ju violated Exchange Act Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 [17 C.F.R. §§ 240.13b2-1].

## FOURTH CLAIM FOR RELIEF

### CNEP Violated Exchange Act Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) and Rules 13a-1, 13a-11 and 13a-13

78.     Paragraphs 1 through 77 are re-alleged and incorporated herein by reference.

79.     CNEP, whose securities were registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], as detailed above, failed to file annual, current, and quarterly reports (on Forms 10-K, 8-K, and 10-Q) with the Commission that were true and correct, and failed to include material information in its required statements and reports as was necessary to make the required statements, in the light of the circumstances under which they were made, not misleading.

80.     As detailed above, CNEP failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of its assets.

81.     As further detailed above, CNEP failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary (i) to permit the preparation of financial statements in conformity with generally accepted accounting principles and (ii) to maintain accountability of assets.  CNEP's internal controls were deficient, as Wang, Ju and Jiang Chao were able to divert corporate funds to corporate insiders and their immediate family members for no known or documented business purpose, as described in detail above.

82.     Based on the foregoing, CNEP violated Exchange Act Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. § 78m(a) and 78m(b)(2)(A) & (B)] and Exchange Act Rules 13a-1, 13a-11 and 13a-13 [17 CFR §§ 240.13a-1, 240.13a-11 and 240.13a-13].

## FIFTH CLAIM FOR RELIEF

**Wang, Ju and Jiang Chao Aided and Abetted CNEP's
Reporting, Recordkeeping and Internal Controls Violations**

83.     Paragraphs 1 through 82 are re-alleged and incorporated herein by reference.

84.     As detailed above, CNEP, whose securities were registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], failed to file annual, current, and quarterly reports (on Forms 10-K, 8-K, and 10-Q) with the Commission that were true and correct, and failed to include material information in its required statements and reports as was necessary to make the required statements, in the light of the circumstances under which they were made, not misleading.  CNEP thus violated Section 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A) & (B)] and Exchange Act Rules 13a-1, 13a-11 and 13a-13 [17 CFR §§ 240.13a-1, 240.13a-11 and 240.13a-13].

85.     By reason of the conduct described above, Defendants Wang, Ju, and Jiang Chao knowingly provided substantial assistance to and thereby aided and abetted CNEP in its

violations of Exchange Act Sections13(a), 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Exchange Act Rules 13a-1, 13a-11 and 13a-13 [17 CFR §§ 240.13a-1, 240.13a-11 and 240.13a-13].

## SIXTH CLAIM FOR RELIEF

### Wang, Ju and Jiang Chao Aided and Abetted CNEP's Exchange Act Section 10(b) and Rule 10b-5 Violations

86.    Paragraphs 1 through 85 are re-alleged and incorporated herein by reference.

87.    As detailed above, CNEP violated Exchange Act Section 10(b) and Exchange Act Rule 10b-5.

88.    By reason of the conduct described above, Defendants Wang, Ju, and Jiang Chao knowingly provided substantial assistance to and thereby aided and abetted CNEP in its violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## SEVENTH CLAIM FOR RELIEF

### Wang and Ju, as Control Persons Under Exchange Act Section 20(a), are Liable for CNEP's Violations

89.    Paragraphs 1 through 88 are re-alleged and incorporated herein by reference.

90.    As detailed above, Wang exercised control over CNEP by, among other things, (i) serving as the President, CEO and Chairman of the Board of Directors, (ii) being the largest CNEP shareholder, (iii) signing SEC filings, including without limitation, CNEP's registration statement on Form S-3 and CNEP's annual, current and quarterly reports on Forms 10-K, 8-K and 10-Q, (iv) having signature authority over CNEP's bank accounts, including without limitation, CNEP's account at CNEP's U.S. Bank Account and (v) directing withdrawals of cash from CNEP bank accounts.

91.     As detailed above, Ju exerted control over CNEP by, among other things, (i) directing transaction between CNEP and herself, (ii) directing transfer of corporate funds to third parties, including without limitation, Sun, (iii) regularly attending board meetings, (iv) negotiating or executing contracts with third parties on behalf of CNEP, (v) authorizing CNEP stock issuances, (vi) directing withdrawals of cash from CNEP bank accounts and (vii) serving as the General Manager of at least two CNEP subsidiaries.

92.     By reason of the foregoing, Wang and Ju are liable as control persons under Exchange Act Section 20(a) [15 U.S.C. § 78t(a)] for CNEP's violations of Exchange Act Sections 10(b), 13(a), 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78j(b), 78m(a) and 78m(b)(2)(A) & (B)] and Exchange Act Rules 10b-5, 13a-1, 13a-11 and 13a-13 [17 C.F.R. §§ 240.10b-5, 240.13a-1. 240.13a-11 and 240.13a-13].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

(a)     Permanently enjoining Defendants CNEP, Wang, Ju and Jiang Chao from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Sections 10(b) [15 U.S.C. §§ 78j(b)] and Exchange Act Rules 10b-5 [17 C.F.R. § 240.10b-5];

(b)     Permanently enjoining Defendants Wang,Ju, and Chao Jiang from violating, directly or indirectly, Exchange Act Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] ;

(c)     Permanently enjoining Defendant CNEP, Wang and Ju from violating, directly or indirectly, Exchange Act Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) [15 U.S.C. §§ 78m(a),

78m(b)(2)(A) and 78m(b)(2)(B)] and Exchange Act Rules 13a-1, 13a-11 and 13a-13 [17 C.F.R. §§ 240.10b-5, 240.13a-1. 240.13a-11 and 240.13a-13];

(d)     Permanently enjoining Defendants Wang, Ju and Jiang Chao from aiding and abetting violations of Exchange Act Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Exchange Act Rules 10b-5, 13a-1, 13a-11 and 13a-13 [17 C.F.R. §§ 240.10b-5, 240.13a-1. 240.13a-11 and 240.13a-13];

(e)     Ordering each Defendant and Relief Defendant to disgorge ill-gotten gains, with prejudgment interest, including, but not limited to, salaries, bonuses, and other benefits wrongfully obtained as a result of the conduct alleged herein;

(f)     Imposing civil monetary penalties against Defendants CNEP, Wang, Ju and Jiang Chao pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; Pursuant to Securities Act 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

(g)     Prohibiting Defendants Wang, Ju and Jiang Chao from acting as an officer or

director of any issuer that has a class of securities registered pursuant to Exchange Act Section

12 [15 U.S.C. § 78l], or that is required to file reports pursuant to Exchange Act Section 15(d)

[15 U.S.C. § 78o(d)]; and

(f)     Granting such other and further relief as the Court deems just and appropriate.

Dated November 13, 2014                    Respectfully submitted,


                                           */s/ Alfred A. Day*
                                           Alfred A. Day (admitted *pro hac vice*)
                                           United States Securities and Exchange Commission
                                           100 F Street, N.E.
                                           Washington, DC  20549-4030
                                           Tel:  (202) 551-4702

                                           Ansu N. Banerjee
                                           United States Securities and Exchange Commission
                                           444 South Flower Street, Suite 900
                                           Los Angeles, CA 90071

                                           Counsel for the SEC

Of counsel:

Antonia Chion*
Melissa R. Hodgman*
United States Securities and Exchange Commission
100 F Street, N.E.

Washington, DC  20549-4030

*  Not admitted in SDNY